## MACKAYE v. MALLORY.

## MALLORY v. MACKAYE.

*(Circuit Court, S. D. New York.   May 11, 1882.)*

1. COPYRIGHT AND INVENTION — TRANSFER — EMPLOYMENT OF AUTHOR AND INVENTOR—RIGHTS UNDER CONTRACT.

    Plaintiff engaged his services to defendant for a period of ten years as an author and inventor, and stipulated that the property in his productions should belong exclusively to defendant, including his time and services, in consideration of $5,000, to be paid to him annually, and certain other contingent provisions as to compensation. *Held,* that such a contract, and the transfer to defendant made in pursuance thereof, invested defendant with the exclusive property in the play copyrighted, and in the patented invention of the plaintiff contemplated in the terms of the engagement or contract.

2. SAME—TITLE—RIGHT TO USE OF.

    In such a contract there is no condition precedent or subsequent which can be invoked to defeat defendant's title or reinvest plaintiff with any interest in the property, nor can he interfere with defendant's use of the property by injunction, or against defendant's wishes to use them himself.

*Scudder & Carter,* for M. H. Mallory.

*W. F. Scott* and *F. N. Bangs,* for Mackaye.

WALLACE, C. J.   The parties seek each to restrain the other by a preliminary injunction from exhibiting the play copyrighted by the title of Hazel Kirke, and from employing the mechanical device known as the "double stage," secured by letters patent of the United States.

Each founds his claim to relief upon an agreement made between them in July, 1879, which agreement each party insists has been violated by the other. By that agreement Mackaye engaged his services to Mallory for the period of 10 years, as author and inventor, and stipulated that the property in his productions, and all the income and receipts arising therefrom, should belong exclusively to Mallory. He further agreed that his time and services, as such author and inventor, should belong exclusively to Mallory, and should be devoted in such manner as Mallory might direct, and that he would not use or permit any person to use any play, dramatic work, or invention produced by him without the consent of Mallory. Mallory, on his part, agreed to pay Mackaye an annual salary of $5,000, and after the profits from the dramatic enterprises in which Mackaye's services should be employed by Mallory should reimburse Mallory's expenditures, and $30,000 in addition, this salary was to be increased by a sum equal to one-fourth of the annual profits. The agreement also provided that Mallory should have the right to terminate the contract at the termination of any one year of the contract period; but if so terminated, then Mallory should pay Mackaye one-fourth of the cash earnings which might have then accrued, after reimbursing Mallory for his expenditures and interest thereon. It was also a condition of the contract that the sums thus to be paid should be received by Mackaye as full compensation for all copyrights, inventions, royalties, income, and receipts.

Proceeding under this contract, Mackaye produced the play of Hazel Kirke, and obtained a copyright for it, and invented and obtained letters patent for the device of the double stage, and assigned the copyright and letters patent to Mallory, while Mallory upon his part expended large sums of money in theater property, and in the current expenses of the presentation and performance of Hazel Kirke, and received large returns from the exhibition of the drama. After the expiration of the first year of the contract, Mackaye insisted that Mallory should furnish him with a statement of accounts; and September 1, 1880, Mallory furnished to Mackaye a memorandum showing receipts amounting to $102,858. Thereupon differences arose between the parties. It is only necessary for present purposes to refer to those which relate to the correctness and fairness of the accounts kept by Mallory, and as to those it is sufficient to say that the merits of the controversy cannot be satisfactorily determined upon the affidavits read, and should not be adjudicated upon this motion.

The controversy upon the statement thus made is sufficiently presented to exhibit the legal and equitable rights of the parties so far as they are to be determined now. It may be that upon accounting a larger sum will be found to be Mackaye's just proportion of the profits than Mallory assumes to be due to him; but the court cannot make a new contract in substitution of the one which the parties made for themselves. That contract, as well as the transfers made in pursuance of it, invested Mallory with the exclusive property in the play and in the patented invention. He was at liberty from the outset to use the drama and the patented device as he saw fit. He had the legal right to give them away or to consign them to obscurity. His contract with Mackaye was to pay the latter a fixed sum by way of salary, and a further contingent sum, the amount of which was to depend solely upon Mallory's option. Undoubtedly, Mackaye expected that Mallory would so employ the property that both parties would profit by it; but the contract carefully excludes the former from any right to insist upon the fulfilment of such an expectation. There is no condition precedent or subsequent, in the contract, which can be invoked to defeat Mallory's title, or reinvest Mackaye with any interest in the property. If Mallory has refused to perform on his part those conditions of the contract that were to be performed subsequently, Mackaye's remedy is by his action for damages. The nature of the property transferred by the contract does not modify the legal rights of the parties. It is not material that its value is difficult to estimate, or that it was the production of intellectual effort. It suffices that Mackaye's right to the compensation under the agreement rests in covenant, for the breach of which he has a remedy upon the contract. He cannot reinvest himself with the title of the property he transferred. *Hartshorn* v. *Day*, 19 How. 211. As Mackaye has no interest in the drama or the patent, but only in the profits which may arise from Mallory's use of them according to the latter's discretion, Mackaye cannot interfere with Mallory's use of them by an injunction, and cannot be permitted, against Mallory's wishes, to use them himself.

An injunction is granted to Mallory and denied to Mackaye.