### MALLORY v. MACKAYE et al.

### MACKAYE et al. v. MALLORY.

(Circuit Court of Appeals, Second Circuit. March 1, 1899.)

Nos. 71 and 72.

**1. CONTRACT OF EMPLOYMENT—CONSTRUCTION.**

A contract provided that defendant, an actor, should give his services to plaintiff for 10 years as an author and inventor, and that the property in his productions, including his time and services, should belong exclusively to plaintiff, in consideration of an annual salary of $5,000, and a proportion of profits in excess of certain amounts. The contract provided that plaintiff could terminate the same at the end of any one year. *Held* to constitute a contract of employment, and not one of partnership, though it contemplated a joint association in an adventure, or a series of adventures, in which plaintiff was to contribute the capital, and defendant his time and services.

**2. SAME—DIVISIBILITY.**

A contract whereby, for a certain number of years, defendant agrees to give his services to plaintiff for a certain specified sum, and for an increase of compensation, under stated conditions, in proportion to the profits of the dramatic adventures in which the parties were to engage, is entire, and not separable; and a breach thereof by defendant as to any material part discharged plaintiff from his obligations.

**3. SAME—BREACH BY EMPLOYE—WAIVER.**

Where, under such contract, the defendant became dissatisfied and abandoned the employment, the fact that some time thereafter the plaintiff gave defendant notice of the termination of the contract as provided, therein was not a waiver by plaintiff of a previous breach of the contract by defendant, with an assent to the restoration of their previous relations; the notice stating that it was given "without prejudice to any rights I may have arising from any violation by you" of the agreement.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Lewis Cass Ledyard, for complainant.
E. W. Tyler, for defendant.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. By the decree appealed from, it was adjudged that Mallory, the appellant, was liable to account, and was indebted in a considerable sum, to the administratrix of Mackaye, under the sixth clause of the contract entered into between Mallory and Mackaye July 1, 1879. 86 Fed. 122.

By the contract, which was in writing and under seal, it was covenanted that Mackaye should devote the whole of his time and services, as author, manager, actor, and director, and in any other capacity having any connection with theatrical labor, to the employment of Mallory, and that the entire product of his intellectual and physical labor, together with all copyrights and patents which he might obtain, should belong absolutely to Mallory, and be his exclusive property. In consideration of the foregoing covenants, Mallory covenanted to pay to Mackaye, as full compensation for the services, copyrights, and inventions, an annual salary of $5,000, payable in equal monthly installments, and further covenanted that if, at any time, the profits resulting from the enterprises in which he should employ Mackaye should equal twice the amount, with interest, expended by Mallory, he would at that time increase the annual salary of Mackaye by a sum which would be equal to one-fourth part of the net profits thereafter.

By the fifth clause of the contract the duration of the agreement was fixed for a period of 10 years from July 1, 1879, and it was provided that Mallory at the termination of any year during the continuance of the contract should have the privilege of terminating it. By the sixth clause Mallory covenanted that if the agreement should be terminated "as herein provided for" after the total earnings from the enterprises should have amounted to a sum equal to the amount of money, with interest, expended in them by said Mallory, and there should be any cash earnings or profits in excess of such expenditures, then Mallory would pay to Mackaye, for the termination of the agreement and the cessation of his salary under it, a sum equal to one-fourth part of the said surplus.

Acting under this contract, Mallory took a lease for the term of five years, with the privilege of another five years, of the Madison Square Theater, expended about $90,000 in improving and fitting up the building, and equipped and maintained a theatrical company to perform there, and a traveling company to perform in other cities and places; and Mackaye rewrote and copyrighted a play, perfected and patented an invention for a double stage, assigned the copyright and the patent to Mallory, and entered upon the management of the theatrical enterprises which the parties undertook. These theatrical ventures were at the outset unprofitable, and subjected Mallory to a loss of over $16,000. Then they became remunerative. Mackaye became dissatisfied, however; and in January, 1881, claiming that Mallory refused to exhibit accounts and had violated the contract, abandoned the employment of Mallory,

and, as he alleged in his cross bill, "elected to treat the said contract as rescinded and abandoned, and as no longer obligatory upon him, and he so notified the said Mallory." Thereafter, on July 1, 1881, Mallory served upon Mackaye the following notice:

"Without prejudice to any rights I may have arising from any violation by you of any provision of the agreement hereinafter mentioned, I hereby notify you that I terminate the agreement between us dated July 1, 1879; the termination to take effect at the expiration of this day of the second year of the said agreement."

By the decree of the court below it was adjudged that "Mackaye had no right to rescind or attempt to rescind the contract, and his alleged rescission was without operation or effect as such." The decree also adjudged that by the notice served by Mallory on Mackaye July 1, 1881, the contract was terminated pursuant to its terms, that the rights of the parties thereunder became fixed pursuant to the sixth clause, and that Mackaye became entitled to receive from Mallory one-fourth of the cash earnings of the enterprises above the amount expended therein by Mallory.

The amount adjudged recoverable of Mallory was arrived at by deducting from the receipts of the theatrical enterprises the expenditures of Mallory, and charging him with the value of the theater lease, as an asset in his hands.

As this decree proceeded upon a cross bill, it is of no consequence that the controversy introduced by the cross bill was not of equitable cognizance. The relief prayed by a cross bill must be equitable relief,—such, in point of jurisdiction, as it is competent for chancery to give; but, subject to this rule, a cross bill is merely a dependency of the original bill, and authorizes the court to give affirmative relief, notwithstanding the matters upon which it proceeds would not confer jurisdiction of an original suit. Story, Eq. Pl. § 399. The learned judge who decided the cause was of the opinion that the cross bill authorized the interposition of equity, because an accounting and the following of the profits was the relief sought. And it was upon this theory, and not upon any notion that there were any equitable grounds for dealing with the contract upon considerations different from those that would obtain in a court of law, that the relief was given.

The contract did not create a partnership between the parties to it, although it contemplated a joint association in an adventure, or a series of adventures, in which Mallory was to contribute the capital, and Mackaye his time and services, and in which the relation between the parties was to be of a duration of 10 years, unless Mallory should see fit at the end of any year to terminate it. Its terms carefully excluded any inference of an intention to constitute the parties partners. It created between them the relation of employer and subordinate agent, and fixed the compensation of Mackaye at a specified salary, which under any circumstances was to be paid by Mallory, and which under stated conditions was to be increased in proportion to the profits of their dramatic ventures. Until Mallory should terminate it, it obligated Mackaye to devote his time and talents to the service of Mallory. Such a contract is

essentially a contract for service, in which the rendition of the services during the contract period is the consideration for the compensation promised by the employer. Such contracts are entire, not separable, and are governed by the rule, applicable to all entire contracts, that a breach by the one party as to any material part completely discharges and releases the other party from his obligations. It is hardly necessary to cite authorities on the proposition that such a contract is entire. The case of Dugan v. Anderson, 36 Md. 567, and Cockley v. Brucker, 54 Ohio St. 214, 44 N. E. 590, are, however, peculiarly apposite. See, also, Larkin v. Hecksher, 51 N. J. Law, 133, 16 Atl. 703; Rockwell v. Newton, 44 Conn. 333; and Hulse v. Machine Co., 25 U. S. App. 239, 13 C. C. A. 180, and 65 Fed. 864. Under such a contract, the party guilty of a breach cannot recover on his express contract, because he has not executed it on his part, and the performance is a condition precedent to the payment reserved; and he cannot recover on a quantum meruit, because an express contract always excludes an implied one in relation to the same matter. As is said in Olmstead v. Beale, 19 Pick. 528, "The above doctrine of the law of contract prevails in all civilized countries, and is supported by an unbroken chain of decisions in England, our sister states, and our own." A court of equity cannot relieve a party from the consequences of his breach of such a contract, and has no more power to interfere with it than a court of law.

It is apparent that the decree proceeds upon the theory that the breach of the contract by Mackaye was of no effect upon the rights of either party to it. If it was not, of course Mallory remained obligated to perform the covenants on his part; and, notwithstanding by Mackaye's unjustifiable conduct he was thenceforth deprived of the benefit of his services, he continued liable to pay him the contract salary until he should elect to terminate the contract at the end of some year of its life, under the sixth clause. Thus, if Mallory had not served the notice, he would have remained liable for the unexpired term under the contract to pay Mackaye an annual salary of at least $5,000, and one-fourth of the profits besides, if any arose upon the contract basis. Such a result would be exceedingly unjust. It is true that Mallory derived large returns from his enterprises with Mackaye, but when the contract was made it could not be foretold whether he would not incur an equally large loss. The ventures contemplated were highly speculative ones. Mackaye was satisfied with the consideration secured to him by the contract, and, so far as the proofs disclose, would have realized a fair equivalent for what he contributed, if he had not repudiated the contract. If he had performed it, however, Mallory would not have been accountable to him for any such division of the profits as has been made by the decree. The basis of the division then would have been one-fourth of the returns after Mallory had been reimbursed double the amount of his expenditures. Upon this basis, there were no profits when Mallory gave notice of termination. By the decree he is made accountable as though Mackaye had fulfilled, and he himself had terminated the contract under the sixth clause, and is thereby required to account for a very much larger portion of the returns.

In giving notice of termination of the contract, Mallory did not waive the breach by Mackaye, much less assent to a restoration of their previous relations; and by the terms of the notice he carefully insisted upon his rights. It was a wholly unnecessary act, and amounted to nothing more than signifying to Mackaye that their relations were formally dissolved. We can discover no reason why he should be placed in a worse situation than he was before in consequence of giving it. If Mackaye had observed the contract, he would not have been entitled to any profits at the time, because none had accrued according to the contract-basis; but, because Mallory deemed it courteous or expedient to give the notice, he has been adjudged liable for a very considerable sum. Such a view of the rights and obligations of the parties is wholly inadmissible. It imposes a penalty upon the party who has lived up to the contract, and gives a premium for its breach to the party in default.

As there has been no appeal from the decree by the representatives of Mackaye, it must be assumed to be conclusively established that Mackaye's breach of contract was without adequate justification. That being so, it must follow that Mallory was absolved from further performance of the obligations of the contract, and was not liable to account.

The decree, so far as it proceeds upon the cross bill, is accordingly reversed, with costs, and with instructions to the court below to dismiss the cross bill and modify the decree accordingly.