THOMAS DEROSIA *v.* PETER FERLAND.

February Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 7, 1910.

*Master and Servant—Wrongful Dismissal of Servant Before Termination of Contract—Servant's Remedies—Constructive Service—Obiter Dicta—Judicial Dicta—Amendment—Identity of Causes of Action.*

A master has the right wrongfully to discharge his servant before the termination of the period for which he was hired, thereby subjecting the master to the consequences of a violation of his contract.

Where a master wrongfully discharges his servant before the termination of the period for which he was hired, the servant may either

treat the contract as continuing and sue for its breach by the discharge, or treat it as rescinded by the master's wrongful act, and sue on a *quantum meruit* for services actually rendered; but he cannot, by treating the contract as continuing and holding himself in readiness to perform on his part till the end of the period for which he was hired, then recover in *indebitatus assumpsit,* or otherwise, wages for services constructively rendered since the discharge. *Boardman* v. *Keeler,* 21 Vt. 77, *Paul* v. *School Dist.,* 28 Vt. 575, *Cashen* v. *School Dist.,* 50 Vt. 30, and *Davis* v. *Streeter,* 75 Vt. 214, distinguished.

Where, in an opinion of the Supreme Court, there is a statement of the law on a point argued by counsel, and, though its decision was not essential to a disposition of the case, deliberately passed upon by the Court, such statement, if a *dictum,* is a "judicial dictum," as distinguished from a mere obiter dictum, which is an argument or illustration personal to the judge who writes the opinion.

A declaration in *indebitatus assumpsit* by a servant to recover wages for services constructively rendered after his wrongful discharge before the termination of the period for which he was hired, cannot be amended by filing a count seeking damages for breach of the contract of hiring, for that would be for a different cause of action; and, since the suit cannot be maintained on any declaration that may be filed in amendment, the Supreme Court will render final judgment.

GENERAL ASSUMPSIT in the common money counts. Plea, the general issue. Trial by jury at the September Term, 1909, Franklin County, *Butler,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*D. W. Steele* for the defendant.

In order to recover for wages under this declaration, plaintiff must show that he has actually performed the service for which he claims pay, constructive service is not available. *Curtis* v. *Smith,* 48 Vt. 116; 1 Greenl. Ev. §66; *Clark* v. *Gray,* 6 East 564; *Gwinnett* v. *Phillips,* 3 T. R. 643; 2 Saunders, 350, note (2); *Bradley* v. *Phillips,* 52 Vt. 517.

If defendant has wrongfully discharged plaintiff, the latter's only remedy is to declare specially on the contract. 1

Chitty Pl. 360; 2 East. 145; 8 East. 300; Smith's Master & Servant, 59; Mayne, Damages, 159; Wood's Master & Servant, 246.

There was a positive and unqualified renunciation of the contract on the part of the defendant on account of the sale of the store, and not a mere expression of an intention not to perform. 117 U. S. 490; 6 Sup. Ct. 850; *Smoot Case,* 15 Wall. 36; 27 Mich. 217; 13 N. H. 513. This being so, the plaintiff was discharged from the continued performance of his promise and entitled to sue at once for the breach. *Hosmer* v. *Wilson,* 7 Mich. 293; *Smith* v. *Lewis,* 24 Conn. 624; *Hawes* v. *Tucker,* 50 N. H. 311; *Clement* v. *Meserole,* 107 Mass. 362; *Parker* v. *Russell,* 133 Mass. 74; *Bassett* v. *Bassett,* 55 Me. 127.

One party to an executory contract may always stop performance thereof by the other party, thereby subjecting himself to the legal consequences of a violation of the contract, and the other party may not thereafter complete the contract and recover the stipulated price for that service, but his only remedy is a suit for breach of the contract. 1 Chitty's Pl. 360; *Derby* v. *Johnson,* 21 Vt. 17; *Danforth* v. *Walker,* 37 Vt. 240; *Morgan* v. *Tucker,* 75 Vt. 56; *White* v. *N. A. Co. Ltd.,* 79 Vt. 206; *Clark* v. *Marsiglia,* 1 Denio 317; *Lord* v. *Thomas,* 64 N. Y. 107; *Gibbons* v. *Benette,* 5 Minn. 499; *Collver* v. *Moulton,* 9 R. I. 90; *Heaver* v. *Luchan,* 22 Atl. 263.

*C. G. Austin & Sons* for the plaintiff.

Defendant had no right wrongfully to discharge plaintiff; hence, when he was discharged, plaintiff had the right to insist upon performance of the contract, to hold himself in readiness to perform on his part, and at the end of the period for which he was hired to recover his stipulated wages for services thus constructively rendered since the discharge. *Gandell* v. *Pontigny,* 4 Camp. 375; *Beeston* v. *Collyer,* 4 Bing. 309; *Collins* v. *Price,* 5 Bing. 132; *Gallo* v. *Bouncher,* 4 Carr. & P. 518; *Armstrong* v. *Bainbridge,* 9 Dunlop B. & M. 1198; *Wilkinson* v. *Black,* 80 Ala. 329; *Holloway* v. *Talbot,* 70 Ala. 389; *Beckwith* v. *Baldwin,* 12 Ala. 720; *Marx* v. *Miller,* 134 Ala. 347; *Moss* v. *Decatur etc. Co.,* 93 Ala. 269; *Fowler* v. *Armour,* 24 Ala. 194; *Strauss* v. *Meertief,* 64 Ala. 299; *Liddell* v. *Chidester,* 84 Ala. 508; *Walworth* v. *Pool,*

9 Ark. 394; *McDaniels* v. *Parks*, 19 Ark. 671; *Van Winkle* v. *Satterfield*, 58 Ark. 617; *Webster* v. *Wade*, 19 Cal. 291; *Ryan* v. *Dayton*, 25 Conn. 188; *Champion* v. *Hartshorn*, 9 Conn. 564; *Burritt* v. *Belfy*, 47 Conn. 323; *Hallack* v. *Lagnon*, 4 Colo. App. 360; *Saxonia etc. Co.* v. *Cook*, 7 Colo. 569; *Cox* v. *Bearden*, 84 Ga. 304, 20 Am. St. Rep. 359; *Harris* v. *Moss*, 112 Ga. 95; *Rogers* v. *Porham*, 8 Ga. 190; *Isaacs* v. *Davies*, 68 Ga. 169; *Britt* v. *Hayes*, 21 Ga. 157; *Rick* v. *Yates*, 5 Ind. 115; *Trawick* v. *Peoria etc. Co.*, 68 Ill. App. 156; *Chiles* v. *Belleville etc. Co.*, 68 Ill. 123; *Hamlin* v. *Ross*, 78 Ill. 422; *Alba* v. *Moriarty*, 36 La. Ann. 680; *Decamp* v. *Hewett*, 11 Rob. 290, 43 Am. Dec. 204; *Baron* v. *Placide*, 7 La. Ann. 229; *Miller* v. *Godard*, 34 Me. 102; *Avery* v. *Tyinham*, 3 Mass. 160; *Armfield* v. *Nash*, 31 Mass. 361; *Murdock* v. *Phillips*, 12 Pick. 244; *McEvay* v. *Bock*, 37 Minn. 402; *Sterling* v. *Bock*, 37 Minn. 29; *Horn* v. *Western L. Asso.*, 22 Minn. 233; *Dodge* v. *Rogers*, 9 Minn. 223; *Ramsey etc. Soc.* v. *Lawton*, 49 Minn. 362; *McMullan* v. *Dickinson Co.*, 27 L. R. A. 409; *Thompson* v. *Detroit*, 80 Mich. 422; *Wins* v. *Luckett*, 77 Miss. 394; *Isaacs* v. *McAndrews*, 1 Mont. 437; *Norton* v. *Caswell*, 165 Md. 359; *Olmstead* v. *Bach*, 18 L. R. A. 53; *Thompson* v. *Wood*, 1 Hilt. 93; *Taylor* v. *Read*, 4 Paige 572; *Castigan* v. *R. Co.*, 2 Den. 116; *Huntington* v. *O. & L. Co.*, 33 How. Pr. 416; *Colburn* v. *Woodworth*, 31 Barb. 381; *Hein* v. *Wolf*, 1 E. D. Smith 70; *Weed* v. *Burt*, 78 N. Y. 191; *Decker* v. *Hassei*, 26 How. Pr. 528; *Klingenberg* v. *Werner*, 42 N. Y. S. R. 186; *Smith* v. *Caslie & Cowan*, 5 L. R. A. (N. S.) 439; *Boyle* v. *Robbins*, 71 N. C. 130; *Caldwell* v. *Beaty*, 69 N. C. 365; *Markham* v. *Markham*, 170 N. C. 356; *Hinkley* v. *Swicegood*, 65 N. C. 626; *Beck* v. *Devereaux*, 9 Neb. 109; *Kahn* v. *Kahn*, 24 Neb. 709; *Weiler* v. *Henaric*, 15 Ore. 28; *James* v. *Allen County*, 44 Ohio St. 226, 58 Am. Rep. 821; *King* v. *Steirn*, 44 Pa. 99; *Union Bank* v. *Heyward*, 15 S. C. 296; *Bradshaw* v. *Brannon*, 5 Rich L. 465; *Janes* v. *Janes*, 2 Swan. 605; *Simon* v. *Allen*, 70 Tex. 398; *Howe* v. *Harding*, 84 Tex. 74; *Howay* v. *Going Northrop Co.*, 6 L. R. A. (N. S.) 49; *Gordon* v. *Brewster*, 7 Wis. 355; *LaCousier* v. *Russell*, 82 Wis. 256; *School Dist.* v. *Drentzer*, 51 Wis. 153; *Dunn* v. *Hereford*, 1 Wyo. 206; *Boardman* v. *Keeler*, 21 Vt. 83; *Paul* v. *School Dist.*, 28 Vt. 575; *Cashen* v. *School Dist.*, 50 Vt. 30; *Davis* v. *Streeter*, 75 Vt. 214.

WATSON, J.   The declaration is common counts in assumpsit. Plea, the general issue.

The plaintiff claimed and his evidence tended to show that on August 12, 1907, he made a contract with the defendant whereby he was to work for the defendant as clerk and salesman in his store at Highgate Center for the term of one year from that date for the sum of four hundred sixty-eight dollars, payable in installments of nine dollars per week, with the agreement that he should be given employment for the full term; that when the plaintiff had worked eight and one-half weeks the defendant sold his stock in the store to one Loukes, notified the plaintiff that he had no more work for him and paid him in full for the services he had performed; that the plaintiff remained at Highgate Center during the entire year, ready and willing to work for the defendant, but was not furnished with more work, and was paid nothing, by him, after the time of the dismissal; that during the remainder of the year the plaintiff did some work under other employment and, deducting what he received therefor, together with the sums received of the defendant for the services actually performed, seeks to recover here the "balance due on services" for the full term of the contract, this suit being brought after the termination of that period.

It was claimed in defence and the defendant's evidence tended to show, that he did not hire the plaintiff for the term of one year, but did hire him by the week and paid him up to the time he was discharged.

The defendant seasonably objected and excepted to the admission of any and all evidence in support of the plaintiff's claim, on the ground that the declaration is general assumpsit, and not special for breach of the contract; and at the close of the evidence the defendant moved for a verdict, for that since the testimony on both sides shows that the plaintiff was paid his wages in full up to the time of his dismissal, no recovery can be had under the common counts in assumpsit. This motion was overruled and an exception saved.

The plaintiff contends for and relies upon the doctrine laid down in *Gandell* v. *Pontigny*, 4 Campb. 375, 1 Stark. 198, 2 E. C. L. 82. There the action was *indebitatus assumpsit* for work and labor, with the common money counts. The plaintiff, employed by the defendant at a yearly salary payable quarterly,

was discharged from his service about the middle of a quarter and paid for the half quarter worked. Thereupon the plaintiff denied the defendant's power to discharge him in the middle of a quarter, and the next day made an offer to do the duties of the situation, which the defendant declined. Lord Ellenborough said, if the plaintiff was discharged without a sufficient cause, the action was maintainable. "Having served a part of the quarter and being willing to serve the residue, in contemplation of law he may be considered to have served the whole." The doctrine of constructive service there laid down was followed in *Collins* v. *Price*, 5 Bing. 132, 30 Rev. Rep. 542, 15 E. C. L. 507, and in other English cases. It was repudiated, however, by Lord Tenterden in *Archard* v. *Hornor*, 3 Car. & P. 349, 14 E. C. L. 604, as early as 1828. There the first count was special on a contract by which the plaintiff agreed that he and his wife would become the servants of the defendant at certain wages, and the defendant undertook, etc., to continue them in such service until the expiration of one year. Breach, that the defendant discharged them without warning before the year had expired. Pleas, non assumpsit to the special counts, also to the other counts as to all but the sum of eleven pounds, and a tender of that sum. The tender was for the time of actual service. The plaintiff and his wife entered upon the performance of the contract in the month of December and were discharged on the 6th day of February, following. The plaintiff claimed wages for the time he had served, and for a quarter more. The evidence did not support the contract declared upon, but instead thereof showed a contract terminable at a month's notice. Consequently it was held that there could be no recovery on the special counts. And his Lordship further held that wages could not be recovered under the common count for any more of the time than the plaintiff had actually served. In 1837 the case of *Smith* v. *Hayward*, 7 Ad. & El. 544, 34 E. C. L. 292, was heard before the court of King's Bench. The declaration contained a special count which was not proved, and counts for work and labor, and on an account stated. Plea, non assumpsit, and payment into court of four pounds on the account for work and labor. The defendant employed the plaintiff for a quarter of a year and paid him therefor. The jury found that the agreement was subject to three months' notice. The plaintiff com-

pleted that quarter; but when he had worked some more than half a month on the second quarter he was dismissed by the defendant. The action was commenced three days later, the plaintiff having first offered to complete the second quarter's service. The money was paid into court as due for the time of actual service after the expiration of the first quarter. The plaintiff claimed pay for the whole quarter from that period. It was held that the action was brought too soon for any question to arise on this point. But in discussing the matter, Lord Chief Justice Denman said he thought the rule was granted for the purpose of bringing the case of *Gandell* v. *Pontigny* into question; that the view taken by Lord Ellenborough of the point there decided was different from that which Lord Tenterden took of the same point in *Archard* v. *Hornor*, and "if we were bound to decide between the two authorities, I should say that the later case is grounded on the better reason. There is obviously a great difference between suing for a breach of contract in dismissing the plaintiff, and for work and labor which, by reason of the dismissal, has not been performed. The defence in the last case would be the nonperformance of the work; in the other, some excuse for breaking off the contract." The other three justices expressed themselves to the same effect. In 1847 the case of *Fewings* v. *Tisdal*, 5 Dowl. & L. 196, 1 Exch. 295, came before the Court of Exchequer. The declaration was *indebitatus assumpsit* for work and labor as a hired servant, and on an account stated. Plea, non assumpsit. The plaintiff, when in the defendant's employ, was dismissed without previous warning and was paid her wages up to the time of dismissal. The action was brought to recover a month's wages, commencing from the day of her discharge. The under-sheriff nonsuited the plaintiff on the ground that the declaration should have been special, and that she could not recover under the common count for work and labor. The rule was discharged, Lord Chief Baron Pollock saying he regretted that the party was unable to recover her claim "in this form of count; it is not the proper form, but it should have been a special one. The case of *Archard* v. *Hornor* governs the present; it has been recognized by all the courts, and has been acted upon in this court, in the case of *Broxham* v. *Wagstaffe*, 5 Jurist, 845." Barons Parke and Alderson concurred therein, the former saying, "The good sense of the

matter is to be found in *Archard* v. *Hornor*, which was after-
wards confirmed by the Court of Queen's Bench in the case of
*Smith* v. *Hayward*, and also by this court." In *Emmens* v.
*Elderton*, 13 C. B. 495, 76 E. C. L. 495, 4 H. L. Cas. 624, Mr.
Justice Crampton of the Exchequer Chamber wrote as follows:
"The result of the modern authorities, as to the remedies of a
servant wrongfully discharged, is well discussed in the passage
in 1 Smith's Leading Cases, 67. He is said to have the election
of treating the contract as continuing, and suing for damages for
the breach by the discharge; or, of treating it as, and acquiescing
in its being, rescinded by the wrongful act of the master, and
bringing an action on the *quantum meruit* for the work actually
performed; and it is added, that he may wait till the termination
of the period for which he was hired, and may then, perhaps,
sue in *indebitatus assumpsit* for the whole wages, relying on the
doctrine of constructive service. It is clear, since the decision
of *Fewings* v. *Tisdal*, that this last remedy cannot be maintained
in the shape of *indebitatus assumpsit;* for the simple reason, that
the allegation of his being indebted for work done is untrue."
To the same effect are *Goodman* v. *Pocock*, 15 Ad. & El. (N. S.)
576, 69 E. C. L. 576; *Wood* v. *Mayes*, 1 Wkly. Rep. 166.

The exact question now presented does not seem to have
been directly passed upon by this Court. Yet in several cases
determined by it kindred questions have been involved, and the
decisions rendered are consonant with the rule which finally
obtained in England, and are quite controlling in the case before
us. In *Derby* v. *Johnson*, 21 Vt. 17, the action was book account,
and the plaintiffs presented an account for labor performed, and
for materials furnished, by them, in the prosecution of work
under a special contract by which the plaintiffs agreed with the
defendants to do all the stone work and blasting on a certain
piece of railroad, at prices specified. After the plaintiffs had
worked a month in performance, the defendants directed and re-
quested them to cease labor and to abandon the further execution
of the contract, in consequence of which the plaintiffs immediately
ceased laboring under the contract and abandoned its further
execution. The auditor, finding that the items of plaintiffs'
account were reasonably and properly charged, upon the facts
reported submitted to the court the question whether the plain-
tiffs were entitled to recover, and if so, what amount. It was in-

sisted by the defendants that their request and direction to the plaintiffs to cease work and abandon the execution of the contract should be considered in the light of a proposition which the plaintiffs were at liberty to accede to or disregard, and that having acquiesced therein by quitting the work, the contract was to be treated as having been relinquished by the mutual consent of the parties. Thus the power of the employers to stop the execution of the contract by the employees, and the right of the latter to recover for services performed, were questions before the court. It was held that the direction of the defendants to the plaintiffs to quit the work was positive and unequivocal; that the employer in a contract for labor has the power to stop the completion of it, if he choose, subjecting himself thereby to the consequences of a violation of the contract; that the workman, after notice to quit, has no right to continue his labor and claim pay for it; that the plaintiffs, having been prevented from executing their part of the contract by the act of the defendants, were entitled to recover, as upon a *quantum meruit*, the value of the services they had performed under it, without reference to the rate of compensation specified in the contract; and that they might, in addition thereto, in another form of action have recovered their damages for being prevented from completing the whole work. In *Sherman* v. *The Champlain Transportation Co.*, 31 Vt. 162, by the contract declared upon the defendants were allowed to use on two of their steamers two machines, known as ''Sickles' patent cut-off,'' belonging to the plaintiff, and a patent right, known as ''Stevens' patent cut-off,'' also owned by the plaintiff, on another of their steamers, for an agreed sum per annum, so long as defendants continued to use said machines and said patent right. The company used the machines and the patent right for some seasons, paying therefor according to the contract, and then notified the plaintiff that they would not pay him anything further for the use of the cut-offs, but continued to use them the same as before the giving of such notice. It was urged that the company had the right to repudiate the contract and refuse to suffer the other party to proceed under it, and thereby subject itself to damages for breach of the contract. The court said that in cases of hiring either party may always put an end to the contract by violating its terms, and only becomes liable for damages for the breach of

the contract—stating in support thereof the rule declared in the later English cases to which we have made reference. It seemed to the court at first blush that this principle of law was applicable to the case, but upon more reflection it was determined otherwise, because of the peculiar species of the contract, and the defendants should not be allowed to repudiate it in part, and not in toto.

Perhaps it cannot be said that the court's statement of the law respecting the right of a party to terminate a contract of hiring, and the resulting liability, was essential to the disposition of that case; yet it was an expression of opinion upon a point argued by counsel and deliberately passed upon by the court; and if it is a dictum, it is "a judicial dictum as distinguished from a mere obiter dictum—i. e. an expression originating alone with the judge who writes the opinion, as an argument or illustration." *Rhoads* v. *Chicago and Alton R. R. Co.*, 227 Ill. 328, 10 Ann. Cas. 111; *Brown* v. *The Chicago & N. W. R. Co.*, 102 Wis. 137, 78 N. W. 771, 44 L. R. A. 579.

In *Chamberlin* v. *Scott,* 33 Vt. 80, the declaration contained a general count for work and labor, and a special count upon the contract. By the contract the plaintiffs agreed to draw for the defendant, from premises described, a lot of timber, and deliver such portion thereof as the defendants should direct on board of the cars at a certain depot, and deliver the rest at one of the saw mills named as the defendants should direct, the whole job to be finished by a day specified. The evidence showed that the plaintiffs completed the drawing of the timber before the expiration of the time limited, but as the defendant failed to furnish cars upon which to load the timber drawn to the depot until after that time had expired, they did not load it. The court reiterated the principles of law enunciated in *Derby* v. *Johnson,* as having been recognized in this State, and held accordingly. In *White* v. *Lumiere North American Co. Ltd.,* 79 Vt. 206, 64 Atl. 1121, the declaration was special to recover damages for breach of contract in dismissing the plaintiff without cause when in performance of his duties and before the end of the period for which he was employed. The defendant excepted to the charge to the jury, that the consummation of the lease for a term which exceeded the plaintiff's employment, by the terms of which all the plant, property, and business of the

defendant passed into the hands of the lessee, was a breach of the contract, entitling the plaintiff to maintain the action, unless his subsequent conduct precluded him from setting that up as a breach. This part of the charge was held to be without error, except that the last and modifying clause, relating to the plaintiff's subsequent conduct, was erroneous, consequent on the further holding that the defendant had the power to dismiss the plaintiff without cause, by subjecting itself to damages for a breach of the contract, and the plaintiff was not at liberty to disregard the dismissal by continuing his labor and claiming pay therefor after notice of his discharge. The propositions of law there stated by the court were necessarily involved in the determination of the case, and consequently they are of the doctrine of the case for which the decision is authority.

Four cases from this Court are cited and relied upon by the plaintiff in support of his position; but an examination shows them severally to be in harmony with those to which we have made reference. Thus, *Boardman, Admr.* v. *Keeler,* 21 Vt. 77, was debt on bond, and general counts for work and labor. The plaintiff's intestate, Paro, executed a promissory note by which he promised to make for the defendant and deliver at his store four installments of a certain number of pairs of boots, each by a day named, Paro to find pegs and wax, and the defendant "to find the rest of the stock." The condition of the bond was, that if Paro should perform the services specified in the note, and the defendant should within ten days after "full payment" thereof execute and deliver to Paro, or his assigns, a good and valid deed of certain premises, then the bond should be void; but otherwise in force. Paro complied with the provisions of the note as to the first three installments, also as to a portion of the fourth. The assignee of the bond, within the time allowed by the contract, demanded of the defendant the leather of which to make the rest of the boots due on the note; whereupon the defendant furnished leather for part of the boots so due, and refused to furnish more,—leaving thirty-four pairs still due at the expiration of the time limited. It was considered that the case showed in substance a tender of the service according to the contract, and a refusal of it by the defendant, in refusing to furnish the essential leather as demanded; and "that the tender, wrongfully refused, should have the effect of actual performance,

so far as to give a right of action on the bond." The plaintiff before us relies upon the holding shown by the clause here quoted as a precedent in his favor. Yet not only is the force of the holding limited by the concluding modifying clause, but it clearly appears from the context that the Court then understood, and made it plain, that the holding could have no application to the question of a right to recover for constructive service. The court below charged the jury that the measure of damages was the value of the land at the time it should have been conveyed, with interest thereon. The rule there laid down was held to be in general the proper one where the entire consideration for the conveyance has been received by the party who is to give the deed; yet in the circumstances there shown the measure of damages was the value of the land only in proportion as the land had been paid for, the Court saying: "But a mere *tender of service* operates no actual benefit to the other party. And though, if he wrongfully refuse it, he may forfeit any consideration previously advanced in payment for the service, it is another question, whether he is bound to render the same prospective compensation, as if the service had in fact been performed. No principle of equal and exact justice would appear to indicate such a rule * * * * The just distinction is between a consideration already advanced for the service, and a payment to be made for it after performance. The first may probably be forfeited by a wrongful refusal of the service when duly tendered. But in the latter case, though the party tendering the service will be entitled to sue upon the contract, yet the recovery should be restricted to the extent of his actual damages": *Paul* v. *School District*, 28 Vt. 575, was an action in assumpsit to recover for services rendered in teaching school, and damages for not being permitted to continue for the full term of the contract. The plaintiff being dismissed after part performance, it was held that, unless incompetency or unfaithfulness be shown, he could not be deprived of his right to complete the performance without a claim to damages resulting from such breach of the contract: *Cashen* v. *School District*, 50 Vt. 30, was in book account. When the plaintiff had taught school in defendant district twenty-three days, in part performance of her contract for the term of twelve weeks, the school house was burned. After the fire, but on the same day, the plaintiff was told by the prudential committee

that if he could get a place for the school she should go on with it; and she, not being discharged from the contract, nor it repudiated in any way, held herself in readiness to go on with the work through the entire term. She was given to understand that she was expected to be ready and able to resume her service of teaching, it being treated as contingent at most whether a place would be provided for a continuation of the school. It was held that she performed the service of her employment in just the way the employer enabled and required her to do it, and that she was entitled to be paid according to the terms of the contract: and *Davis* v. *Streeter,* 75 Vt. 214, 54 Atl. 185, the last of the four cases from this Court on which the plaintiff relies, was an action of general assumpsit. There the evidence tended to show that the plaintiff rendered services by way of work and labor for the defendant under a special contract which he forced her to abandon before complete performance. It was held that this evidence tended to support a *quantum meruit* recovery under the general count for such services performed.

No case has been called to our attention, and we have found none, in which the doctrine of constructive service has been applied, or recognized as law, in this State. On the contrary, we think the decisions of this Court to which reference has been made, some of them precedential in nature, show the law here to be, that a servant who was dismissed during his performance of an entire contract, by the master, without cause, cannot by waiting until the end of the term for which he was employed sue for and collect wages, as such, for the portion of the term after the time of his dismissal. As before seen, the law does not permit a servant to continue to work and claim pay for it after his discharge. To allow him to do so would be inconsistent with the right of the master to stop performance by the servant, by taking upon himself the liability for resulting damages. How much more inconsistent would it be to say that when no work is subsequently done by the servant, he may bring *indebitatus assumpsit* and recover for constructive service? The reason given by Mr. Justice Crampton why such a remedy cannot be maintained, that the allegation of the master's being indebted for work done is untrue, is substantiated by the holding of this court in *Curtis* v. *Smith,* 48 Vt. 116, that a plaintiff cannot recover on the common count for work and labor done and per-

formed, without showing that he has performed work and labor for the defendant at his request, either expressed or implied.

It follows that the defendant's motion for a verdict should have been granted.

The plaintiff says, however, that the parties were heard on their evidence the same as they would have been had the declaration been special for damages, and hence, on the authority of *Chaffee* v. *Rutland Railroad Co.*, 71 Vt. 384, 45 Atl. 750, an amendment of the declaration should be permitted by filing a special count to conform to the proof in this respect, and that on filing the same the judgment should be affirmed. The defendant objects thereto, denying that the case was fully heard on questions which would arise in a trial for damages. Regardless of the range of the evidence, leave to file such new count cannot be granted. As seen, to entitle the plaintiff to recover in the present case he must show that he performed work and labor for the defendant at his request; while in an action for damages for breach of the contract,—the plaintiff's only available remedy,—he would need to prove, not that he performed such services, but that he was prevented by the defendant from so doing in completion of the existing contract between them. Clearly the causes of action are not the same, and the declaration cannot be amended to give the latter remedy. *Brodek & Co.* v. *Hirschfield*, 57 Vt. 12; *Estabrooks* v. *Fidelity Mut. Fire Ins. Co.*, 74 Vt. 202, 52 Atl. 420. And since this suit cannot be maintained on any declaration which may be filed in amendment, final judgment will be rendered here.

*Judgment reversed and judgment for the defendant to recover his costs.*