## MORTON v. ROANOKE CITY MILLS, Inc.

(Circuit Court of Appeals, Fourth Circuit. October 19, 1926.)

No. 2489.

1. **Contracts** ⟷323(1).

Reasonableness of delay in performing contract is a question of law for the court, where time taken is so unreasonable as to leave no room for doubt.

2. **Contracts** ⟷299(1).

Delay by contractor for painting signboards to advertise defendant's products of more than two years before completion *held* unreasonable.

3. **Work and labor** ⟷29(1).

Signboard contractor, having unreasonably delayed completion, is entitled to recover for work done before notice of repudiation only in so far as other party benefited therefrom, not exceeding contract price.

4. **Work and labor** ⟷26.

Signboard contractor, after unreasonable delay in completion, has burden of proving value of his services before repudiation of contract.

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Action by Ph. Morton against the Roanoke City Mills, Inc. From a judgment for a lesser amount than that asked, plaintiff brings error. Affirmed.

A. B. Hunt, of Roanoke, Va., and William J. O'Brien, of Baltimore, Md. (Seymour O'Brien, of Baltimore, Md., on the brief), for plaintiff in error.

W. J. Henson and E. W. Poindexter, both of Roanoke, Va. (Poindexter & Poindexter and Jackson & Henson, all of Roanoke, Va., on the brief), for defendant in error.

Before ROSE and PARKER, Circuit Judges, and SOPER, District Judge.

SOPER, District Judge. On October 9, 1919, Ph. Morton entered into a written contract with Roanoke City Mills, Inc., where-

in Morton agreed to paint, from a design to be submitted to and approved by the corporation, 50 out-door advertising bulletin boards, and to erect and maintain them in good condition on exhibition, and to rent them for three years to the corporation at the rate of $4 per month for signs already constructed and located, and at the rate of $5.30 per month for new signs. Fifty boards were erected, but the corporation refused to pay for them, charging unreasonable delay in their erection, and Morton brought an action at law for breach of contract and claimed the sum of $9,165.60. The jury, having heard testimony as to the time and manner in which the work was done, found a verdict for the plaintiff for $2,784.60, and the case was brought here on writ of error by the plaintiff, who complains of the court's instructions to the jury.

The important question in the case is whether the plaintiff was guilty of unreasonable delay in painting and erecting the boards. No time was specified in the contract; but the beginning of the period of construction was necessarily governed by the date of approval of the design by the corporation, which occurred February 3, 1920. The evidence showed that the first board was erected on August 23, 1920; 7 boards in the 12 months subsequent to February 3, 1920, and only 26 boards altogether prior to October 19, 1921. On that date the corporation, by letter, declined to pay a bill submitted for work done, and warned the contractor that any further work under the contract would be done at his own risk, since the corporation would not accept the service at that late date. Morton nevertheless proceeded with the work, but did not finish it until October 20, 1922, when the last board was put in place.

The court instructed the jury (1) that a contract which does not specify the time in which the work is to be done is to be read as if a reasonable time were stated as the time of performance; and (2) that the delay on the part of the plaintiff was so great that the defendant's letter of October 19, 1921, repudiating the contract, was justified, and that the plaintiff could not recover anything for performance after the receipt of the letter, notwithstanding such performance may have been beneficial to the defendant. The plaintiff complains that these instructions were wrong for two reasons: (1) Because the letter of October 19, 1921, was not a definite repudiation of the contract; and (2) because the evidence as to the causes of the delay was conflicting, and the court

should therefore have permitted the jury to decide whether the work was done in a reasonable time.

[1, 2] As to the first reason, little need be said, since the letter clearly announces a definite refusal on the part of the defendant either to pay for part performance or to accept future services by the plaintiff. So far as the reasonableness of the delay is concerned, we think that the case falls within the rule laid down by Circuit Judge Taft in Hamilton v. Phœnix Ins. Co., 61 F 379, 9 C. C. A. 530, that the question of reasonable time is a question of law for the court, where the time taken is so clearly reasonable or unreasonable that there can be no room for doubt as to the proper answer to the question. See, also, Wiggins v. Burkham, 10 Wall. 129, 19 L. Ed. 884; Nunez v. Dautel, 19 Wall. 560, 22 L. Ed. 161. It should be borne in mind that the obvious purpose of the defendant was to increase its business, under the conditions then existing, by the advertisement in certain Southern States of two established brands of the corporation's manufactured product, and that the accomplishment of this design would be frustrated in large measure if the erection of the signs should be indefinitely postponed.

There was only one witness on behalf of the defendant, who endeavored to explain the extraordinary delay. He gave evidence tending to show that during the years 1919–1921 sign painters were difficult, if not impossible, to secure; but he also said that Morton contracted for more work than his force could execute, and suggested that, if he had paid higher wages, workmen could have been gotten to do the defendant's work more promptly. On the other hand, witnesses for the defendant denied that a scarcity of painters existed during the period. We do not think that this testimony raised an issue of fact bearing on the reasonableness of the delay, which should have been submitted to the jury. There was no proof that the defendant knew or that its attention was called to a scarcity of painters when the contract was executed in 1919, and there was no exception in the contract in favor of the defendant with reference to labor difficulties. Under these circumstances, the ruling of the court that the defendant was guilty of unreasonable delay was correct.

[3] Nevertheless the District Judge did not direct a verdict for the defendant, but instructed the jury that the plaintiff was entitled to recover for the work done before notice of repudiation, and that the amount should be measured by the benefit received

therefrom by the defendant, not exceeding, however, the contract price, and that the burden of proof in this respect was on the plaintiff. This instruction, the plaintiff says, was erroneous, because it limited the plaintiff to a recovery on a quantum meruit basis only, and deprived him of the right to profits on the work done, and also because the burden of proof was placed on the plaintiff to show what benefit the defendant received from the advertisement of its wares.

Obviously the plaintiff was not harmed by the application of the rule that a party in default under a contract for furnishing labor and materials, who has not willfully abandoned or broken the contract, may recover the value of a part performance which is beneficial to the other party, and has been accepted and retained by him. Williston on Contracts, § 1475; Woodward on the Law of Quasi Contracts, § 175; 13 Corpus Juris, 692. Nor was it error to instruct the jury that the amount of recovery should be measured by the benefit received by the defendant, rather than by the cost of the work to the plaintiff. Since the contract had been broken, the plaintiff was not in a position to recover under its terms; nor was he entitled to receive, as a matter of right, the fair value of the work and materials furnished. His profit or loss was not relevant to the inquiry. The benefit to the defendant was the proper test. Williston on Contracts, §§ 1482, 1483; Woodward on the Law of Quasi Contracts, § 178.

[4] It was correct to charge the jury that the burden of proof was upon the plaintiff. It was incumbent upon the plaintiff to prove the value of his services (not the consequential or indirect benefit to the defendant flowing from the advertisement of its business), and until this was done, the plaintiff had not made out a case which entitled him to recover. See Gillis v. Cobe, 177 Mass. 584, 59 N. E. 455; Skowhegan Water Co. v. Skowhegan Village Corp., 102 Me. 323, 66 A. 714.

Affirmed.