JAY W. THOMPSON *v.* HARLAN MILLER.

November Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed January 19, 1929.

*Edward H. Holden* for the plaintiff.

*Collins M. Graves* and *Frank C. Archibald* for the defendant.

POWERS, J.  This suit grows out of the damage done to the defendant's farm in Arlington by the flood of 1927.  On this farm there was a pond made by an earth dam which set back the waters of a brook that ran through it.  On this dam was built a road which led from the highway to the farm buildings. There was another road to the place, a "back road," but the one on the dam was commonly used.  The flood washed out the dam, thus destroying the road, and left the place inaccessible, except by way of the back road, which the flood left in very bad shape.  At this time, the defendant was in Paris engaged in the foreign service of the Government.  The farm was left in the sole charge of one Joseph Benjamin, who had had supervision over it for about two years.  He hired and discharged help, bought supplies and equipment, sold produce and other property.  Most of his activities pertained to the agricultural part of the business, but some had to do with construction.  The defendant, in Paris, was advised "of what had been done by the flood," though it did not appear just how he received his information or what details it covered.  Upon receipt of this information, and on November 7, 1927, he cabled Benjamin as follows:  "Please repair dam immediately.  Cable estimate." Thereupon, Benjamin called the plaintiff to the farm, showed him the cablegram from the defendant, and let him the job of restoring the dam and road for $1,900.  The plaintiff immediately began to get ready to do the job.  He looked up and

arranged for help, rented some machinery, and moved to the site some of the equipment required, and was ready to go to work on the following Monday which was the 14th. On November 11, 1927, Benjamin cabled the defendant as follows: ''Price for repair washout of dam by contract nineteen hundred dollars by Jay Thompson at Manchester Center.'' On the following day (Saturday) Benjamin received an answer from the defendant as follows: ''Await further instructions before commencing dam. Is road passable now?'' On Sunday, Benjamin telephoned the plaintiff putting a stop to the work, and later the plaintiff removed his equipment from the site. On or about November.14, at Benjamin's request the plaintiff gave him a statement of the expenses he had incurred in getting ready for the job, at which time he was assured by Benjamin he should have damages for its loss. About December 10, the defendant returned to this country, and this statement, approved by Benjamin, was presented to him. On the 20th of the month he sent the plaintiff a check to pay it. The check was not accepted and was returned to the defendant. This suit was then brought. The defendant has never denied his liability for the expenses above referred to, and at no time prior to the trial did he repudiate the contract made by Benjamin or deny the latter's authority to make it.

The facts above recited were disputed in many respects, but were within the tendency of the evidence.

The original complaint herein was in the common counts in assumpsit. Before trial, the plaintiff was allowed, without objection, to amend this complaint by filing a count declaring specially on the contract and claiming damages for being deprived of the right of carrying it out. At the close of the plaintiff's evidence, the defendant moved the court to direct a verdict for the plaintiff for the amount of the specification filed under the common counts. This motion was predicted upon the claim that there was no evidence in the record tending to show that Benjamin had authority to bind the defendant by this contract to repair the dam, which eliminated the special count as a basis of recovery. The motion was granted, and the plaintiff excepted.

The defendant now says that the special count filed as an amendment was not properly in the case and should have been disregarded by the court; and therefore he says, the ruling

of the court below was right, even if it turns out that the reason he gave for·it was wrong. This claim seems to be based upon the assumption that the plaintiff made a binding election when he declared in the common counts, and could not thereafter sue by or recover under a special count on the contract. This is an error into which the defendant may have been led by one or two rather misleading expressions in our cases. In *Sherman* v. *Champlain Transportation Co.*, 31 Vt. 162, 179, in speaking of a servant discharged before his term expired, it is said that one so situated "may *elect* either to recover in *quantum meruit* * * * * or may sue for breach of the contract * * * * * *." And in *Peist* v. *Richmond,* 97 Vt. 97, 100, 122 Atl. 400, we said that a contractor who was not allowed to finish his job "had a choice of remedies" as above. It was not intended, however, in either of these cases, to assert that the doctrine of election of remedies applied. A plaintiff situated as this one is may declare for a *quantum meruit* or he may declare specially on the contract, or he may join such counts in his complaint. The choice of one of these remedies does not in law amount to the rejection of the other. *Katzeff* v. *Goldman,* 248 Mass. 365, 142 N. E. 924, 925; *Redhead Bros.* v. *Wyoming, Cattle Ins. Co.*, 126 Iowa, 410, 414, 102 N. W. 144. Such counts were joined in *Chamberlin* v. *Scott,* 33 Vt. 80, and in *Boville* v. *Dalton Paper Mills,* 86 Vt. 305, 85 Atl. 623; and in the latter case (86 Vt. at page 318) it was held that such a joinder is permissible. Then, too, the defendant is too late to be heard to assert such a fault in the declaration. He went to trial without raising the point. If the declaration was faulty in the respect now claimed, he should have demurred (*Newton, Admr.* v. *American Car Sprinkler Co.,* 87 Vt. 546, 550, 90 Atl. 583), or have raised the question in some other appropriate way: Not having done so, he cannot do so now. *Boville* v. *Dalton Paper Mills, supra* (86 Vt. at page 321). And finally, G. L. 1799 provides that where there is a misjoinder of causes of action, and the fault has not been corrected before judgment on the verdict, such fault shall be deemed to be waived.

■ ■ The question before us, then, comes down to the question of Benjamin's authority. The mere fact that he was in the defendant's employ did not clothe him with authority to make this contract. ·It was a circumstance, however, which together with the things he did for and on behalf of the d⌐

fendant to the latter's knowledge and with his approval, may be considered in determining the scope of his authority when the rights of one dealing with him as an agent are in suit. For one who deals with an agent may assume that his authority is what it reasonably appears to be, unless he is shown to have had notice of its limitations; and the principal will be bound accordingly. *Wilder* v. *Hinckley Fibre Co.*, 97 Vt. 45, 49, 122 Atl. 428. The court below evidently regarded the cablegram as the only proof of Benjamin's authority to make this contract. But it was not all that the plaintiff had a right to have considered. The question was, what was the plaintiff, acting reasonably, justified in understanding from the cablegram, when read in connection with the known relations between the defendant and Benjamin and what the latter was allowed to do regarding the defendant's business, it authorized Benjamin to do about the repairs to the dam. This was a jury question. Of course the cablegram would ordinarily be for the court to construe; but where, as here, the proper conclusion is to be drawn from a communication in writing, taken in connection with other facts and circumstances, the question goes to the jury. *White* v. *Lumiere North American Co., Ltd.*, 79 Vt. 206, 222, 64 Atl. 1121, 6 L. R. A. (N. S.) 807.

But if the question depended upon the cablegram, alone, the result would be the same. For the law is that if a principal gives instructions to his agent in such uncertain terms as to be fairly susceptible of two different interpretations, and the agent, *bona fide*, adopts one of them, and acts upon it, it is not competent for the principal to repudiate the act as unauthorized, because he intended the instructions in the other sense of which they are equally capable. *Maidment* v. *Frazier*, 90 Vt. 520, 525, 98 Atl. 987.

It cannot be said as matter of law that this contract was made without authority.

*Reversed and remanded.*