## SCHWASNICK v. BLANDIN et al.
### No. 369.

Circuit Court of Appeals, Second Circuit.
May 8, 1933.

Searles & Graves, of St. Johnsbury, Vt. (Arthur L. Graves, of St. Johnsbury, Vt., of counsel), for appellants.

Jones & Jones, of Rutland, Vt. (George F. Jones, of Rutland, Vt., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

356

L. HAND, Circuit Judge.

Schwasnick sued Blandin and Glover in the state court, who removed the cause to the federal court for diversity of citizenship. Schwasnick's declaration, incorporated in the writ, was on the common counts, for money had and received, for money lent, for money paid to the defendants' use, for work and labor rendered at their request, for materials furnished, and for goods sold. In consideration of these he alleged that the defendants promised to pay $5,000. His specifications endorsed upon the writ read as follows: "Sixteen hundred dollars due April 22, 1931, as set forth in an agreement dated April 22, 1930; two hundred eighty-eight dollars interest for one year on amount loaned; Thirteen hundred dollars for services rendered from April 1, 1930 to April 1, 1931, according to an agreement duly executed April 22, 1930; the sum of Nine Hundred eighty-four dollars and eighty-five cents for services rendered from May 1929 to December 1, 1929, at five dollars a day, which sum includes the use of John Junior's team, Tony's team and three pigs taken to Manchester." The defendants pleaded the general issue.

The cause came on for trial to a jury and the evidence developed the following facts: Schwasnick had done certain work for the defendants before April 22, 1930, as a lumberman upon land owned by them in Vermont, in which he alleged that he had suffered losses amounting to $3,000. The parties differed as to whether he had any legal claim for this, and its basis if any does not appear in the record. He had also horses and logging equipment, apparently agreed to be of the value of $1,800, part of which were on the defendants' land where the operations were going on. On April 22, 1930, the parties made a written contract by which Schwasnick agreed "to accept the sum of $4,800, to be paid at the rate of $1,600 per year, with interest at 6% in consideration for the sale of all his horses, logging and camp equipment; for losses suffered during previous logging seasons, and for the continuation of the cutting of pulp-wood and hardwood * * * as long as he is physically fit and performs his work in a satisfactory manner. * * * As an additional consideration for the continuation of the * * * logging" he "shall receive a salary of $2000. per year from April 1st." Schwasnick continued to cut lumber on the defendants' land until April 1, 1931, and on April 24th of that year he demanded his salary of $2,000 due April 1st, and $1,600 the first installment of the sum of $4,800. The defendants refused, and Schwasnick left the job and attached some of their property on April 28th, following this by a later levy in May. Upon the trial the defendants tried to prove that the work had been ill done, particularly because of Schwasnick's failure to care for lumber roads through the woods, of improper "knotting" of the timber, of negligence in the care of the tools, and in cutting a swath as a runway for the lumber.

The judge charged the jury that if the plaintiff had not broken his contract, he might recover for the whole amount, $4,800, with one year's salary, $2,000, that if he had failed to perform the work in a workmanlike fashion, even though that was through "bad faith," he might recover the reasonable value of his services; and that the defendants had the burden of proving that the plaintiff broke the contract. The defendants excepted to the last, and also to the charge that if the plaintiff broke the contract, he might recover the reasonable value of his services, insisting that in that case he was limited to the benefit derived by the defendants from his services. The jury brought in a verdict for $1,600 for each of the years ending 1931, 1932, 1933, and $2,000 for services for 1931. The judge entered judgment for $3,600 with interest, less $1,100 paid, apparently reserving the power to enter future judgments for $3,200 more in two installments, as the years elapsed.

█ It was an error to charge that the defendants had the burden of proof to show that the plaintiff did not perform, and for this at any rate the judgment must be reversed. Whether the action was in special assumpsit for breach of contract, or in indebitatus assumpsit for restitution, the plaintiff had the burden of showing that he had performed, since only then were the defendants in default. Indeed even if he wished to recover the benefits derived by the defendants from his services, he must prove that, though he was in default, that default was not willful and deliberate. On no theory could the defendants be required to prove that he was in default, or that his default, if there was any, was in "bad faith." Since the case must go back for a new trial, we give our views as to the parties' rights. The first question is as to the recovery possible under the declaration.

█ The plaintiff's specifications were vague, and certainly did not set up the contract, though they alluded to it. The first amount claimed, $1,600, was clearly the first payment under the contract; the second is

apparently one year's interest on the whole amount, $4,800; the third is the first year's salary, $2,000 less $700 admitted to have been paid; the fourth, so far as we can gather, is for services before the contract was made and an independent cause of action. The whole, taken together with the declaration, cannot be regarded as a declaration in special assumpsit, though such a count may in Vermont be added to the common counts. Thompson v. Miller, 101 Vt. 452, 144 A. 376. This decision lays any doubts raised by the language in Sherman v. Champlain Transportation Co., 31 Vt. 162, Derosia v. Ferland, 83 Vt. 372, 76 A. 153, 28 L. R. A. (N. S.) 577, 138 Am. St. Rep. 1092, and Peist v. Richmond, 97 Vt. 97, 122 A. 420. But the plaintiff did not add a count in special assumpsit, and unless he might recover for breach of contract on the common counts, he was limited to a quantum meruit. It is well settled in Vermont that he was so limited. Derby v. Johnson, 21 Vt. 17; Chamberlin v. Scott, 33 Vt. 80; Derosia v. Ferland, supra, 83 Vt. 372, 76 A. 153, 28 L. R. A. (N. S.) 577, 138 Am. St. Rep. 1092; Peist v. Richmond, supra, 97 Vt. 97, 122 A. 420. Thus the whole action was misconceived; there could be no recovery on the contract at all, neither for the installments, nor for the salary as such. The action was for restitution of the consideration performed by the plaintiff and could be nothing else.

When the promisee has not performed, he obviously cannot recover on the promise, provided performance is a condition. Yet when the default is not willful and deliberate, it is generally agreed that he may recover so much as his efforts have actually benefited the promisor. Dermott v. Jones, 23 How. 220, 234, 16 L. Ed. 442; Morton v. Roanoke City Mills, 15 F.(2d) 545 (C. C. A. 4); Pinches v. Swedish Evangelical Church, 55 Conn. 183, 10 A. 264; Sherman v. Buffinton, 228 Mass. 139, 117 N. E. 33; Williston, § 1475; Restatement, Contracts, § 357 (1) (a). This is the doctrine in Vermont also. Dyer v. Jones, 8 Vt. 205; Merrow v. Huntoon, 25 Vt. 9; Morrison v. Cummings, 26 Vt. 486; Kelly v. Bradford, 33 Vt. 35; Viles v. B. & M. Traction Co., 79 Vt. 311, 65 A. 104. The theory is that it is unjust for the promisor to profit, even though his promise has never become absolute. Furthermore, if the promisee has performed so far as he has gone, and the promisor breaks his promise, the promisee may abandon the contract and sue for restitution, in which he can recover the reasonable value of his services, measured by what he could have got for them in the

market, and not by their benefit to the promisor. United States v. Behan, 110 U. S. 338, 345, 4 S. Ct. 81, 28 L. Ed. 168; Restatement, Contracts, § 347(1) (a) Comment c; Williston, § 1480. The law in Vermont is the same. Chamberlin v. Scott, supra, 33 Vt. 80; Boville v. Dalton Paper Mills, 86 Vt. 305, 85 A. 623; Peist v. Richmond, supra, 97 Vt. 97, 122 A. 420. Preble v. Bottom, 27 Vt. 249, is to be taken as in line, after the explanation in Chamberlin v. Scott. The language used in Blood v. Enos, 12 Vt. 625, 36 Am. Dec. 363, so far as it seems to limit recovery to benefits in such a situation, can no longer be regarded as authoritative. In our decision in Stephens v. Phœnix Bridge Co., 139 F. 248, the point was apparently not taken; it is not to be understood as a contrary ruling. This difference in the recovery is in accord with principle. When the promisee has not fulfilled the condition of the promise, and cannot charge the promisor with a breach, he may invoke only the equitable intervention of a court, though the remedy is legal in form. Justice demands no more than that the promisor shall not profit at the promisee's expense. When he has fulfilled the condition, and the promisor has broken his promise, he sues upon that wrong. True, he does not seek the equivalent in money of what was promised; but it is the · breach which gives him the power to call off the contract and raises the obligation to restore him to the status quo ante. The action is therefore a remedy for the breach, though it requires the equivalent of something which the promisor has never undertaken to perform.

Not only was the case tried as though it were in special assumpsit for damages, and not on the common counts; but it was tried in disregard of the distinction just noted. The plaintiff asserted that he had performed for a year and that the defendants had refused to pay him, thus giving him the privilege of abandoning the contract. The defendants denied this, and asserted that he had not performed and that their promise never became absolute. The judge should have charged in the alternative according as the jury found one way or the other. If they took the plaintiff's view, and he had performed, he was entitled to the reasonable value of his services while performing. If on the other hand they found that the plaintiff had· not performed, then the defendants were not in default, and the plaintiff could recover only the amount by which they were benefited. Moreover, the charge was wrong even upon the second theory, for the judge allowed the jury to find for the plaintiff though he was in

willful and deliberate default, in which case he should not recover at all. Mack v. Bragg, 30 Vt. 571; Mallory v. Mackaye, 92 F. 749 (C. C. A. 2); Carpenter v. Josey Oil Co., 26 F.(2d) 442 (C. C. A. 8); Susswein v. Pa. Steel Co. (C. C.) 184 F. 102, 108 (semble).

The charge upon the burden of proof was, as we have said, also wrong, because if the plaintiff wished to recover the reasonable value of his services, regardless of their benefit to the defendants, he was obliged to prove performance so far as he had gone; that is, that he had done the work in proper fashion. Incidentally, if he so proved, the defendants could have no claim in recoupment, and thus that claim could not arise. If on the other hand, he wished to recover on the theory that though he had not performed, he was not in willful and deliberate default, he was equally bound to prove that he was not, since that too was a condition upon the implied obligation to restore any benefits received. Again in that case, the burden was on him to prove the amount of that benefit; that is, by how much the defendants were enriched, notwithstanding any injuries done to their land, to the tools, or to the timber. The defendants were under no burden to prove those injuries, and the jury should have been told to find the net benefit of the plaintiff's services to the defendants after deducting any injuries so done by defective work. So far as they were in doubt as to those deductions they must allow them, since the plaintiff must establish the net benefit. In this aspect also the defendants' recoupment would not figure.

A final question arises as to how far the contract may be used as a limit to the plaintiff's recovery. If the consideration had been apportioned to several payments, difficulty might arise, for in such cases if the promisee has given the complete performance allocated to one promise, the usual rule is that he may not recover restitution at all, but must sue for the breach. Restatement, Contracts, § 351.(a). Possibly there is no inevitable

reason why this should be true, since the promisor's wrong might perhaps equally impose upon him an obligation to restore; but the point is not necessary to decide here. The annual services were not allocated exclusively to the salary; the yearly payments of $1,600 were to pay for them in some part. These were the consideration for the logging equipment, the settlement of the claim for $3,000 and the services. The contract did not attempt to apportion these payments among the three items, and for this reason it was permissible for the plaintiff to recover in this action for the services. Moreover, he was not limited by the contract price, if he succeeded in proving a breach of contract by the defendants. Chamberlin v. Scott, supra, 33 Vt. 80; Williston, § 1485. There was no contract price for the reasons we have just given. Thus, upon this hypothesis he might recover the reasonable value of his services, as the jury should find them.

However, should he fail to prove a breach, but succeed in satisfying the jury that his failure to perform was not willful and deliberate, it seems to us that as to the services, he must be limited to $2,000, even though the jury thought the benefit to the defendants to be greater. This would clearly be the case if the services were allocated to the salary alone. Williston, § 1485. They were not; but the extent to which they were to be paid by the yearly payments does not appear, and the plaintiff has the burden of showing it. He may succeed in doing so outside the contract, but unless he does, he is limited to $2,000. As to the logging equipment the same considerations apply, but if the parties agree, as apparently they do, that the conceded value of these is $1,800, no difficulty arises.

It was of course irregular in any view to attempt to reserve power to enter future judgments. This action must be finally concluded by a single judgment, entered in accordance with the findings of the jury upon directions as we have indicated.

Judgment reversed; new trial ordered.