MARIE KRUCK, ADMINISTRATRIX, *vs.* THE CON-
NECTICUT COMPANY.

Second Judicial District, Norwich, April Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

An action for negligence cannot be supported by evidence which fur-
nishes nothing more substantial than a basis for surmise or con-
jecture. The plaintiff is bound to remove the issues both as to
negligence and contributory negligence from the realm of specula-
tion, and to establish facts from which the inference or conclusion
of the defendant's liability may be logically and reasonably drawn.
If he fails to meet this requirement, a judgment of nonsuit should
be rendered against him.

Whether a street-railway motorman exercised reasonable care in the
management of his car with respect to one who was in the street at
night intending to board it, cannot be determined in the absence
of evidence tending to show the position and movements of the
latter after he reached the street, except the fact that he signaled
for the car to stop. The burden of showing the situation which
confronted the actors during that interval rests upon the plaintiff,
and upon his failure to present any substantial evidence upon that
vital point in the case no other judgment than one of nonsuit can
properly be rendered.

The mere failure of a motorman upon a street-railway car to turn off
his searchlight when a person ahead exhibits an intention to be-
come a passenger, is not necessarily, and under all circumstances,
negligence upon his part.

Argued April 25th—decided June 15th, 1911.

ACTION to recover damages for personal injuries re-
sulting in the death of the plaintiff's intestate, alleged to
have been caused by the defendant's negligence, brought
to the Superior Court in New London County where
the plaintiff was nonsuited in a trial to the jury before
*Reed, J.*, and from the refusal to set aside such judg-
ment the plaintiff appealed. *No error.*

The plaintiff offered evidence of the following facts:
The plaintiff's intestate was killed by being hit in the
head by the front end of a passing trolley-car which

he was expecting to board after dark.  Boswell Avenue, upon which the accident happened, has a double line of trolley rails laid upon its westerly side.  The rail farthest east lies in about the middle of the avenue, and is 18.7 feet from the east gutter.  A few feet northerly of the point of accident are a pair of poles marked to indicate a place where cars will stop when desired.  Ninety-eight feet northerly of the poles is an incandescent street-light.  On the east side of the avenue directly opposite the point of accident and standing near to the street is a hotel.  To the south the tracks extend in a straight course for a distance of about four hundred feet, and there is no obstruction to the view.

The car which hit the intestate was coming from the south on the easterly lines of tracks.  It was equipped with an electric searchlight carried in front.  The radiating rays of this light, which was and remained in operation, would light up the full width of the avenue at the place of accident from the point where the car was when signaled, as hereinafter stated, and continuously thereafter until the car was close to that place.  They are so powerful as to be dazzling and blinding to the eye when looked at.

Only one witness of the occurrence was produced. He testified that he and the intestate were together in the barroom in the front of the hotel, when the latter, who was familiar with the surroundings, heard the approach of the car, which he desired to take; that the intestate started for the street; that arrived there, and being, to use the language of the witness, "out in the middle of the street," he held up his hand as a signal for the car, which was then about three or four hundred feet away, to stop; that it continued going at about fifteen or twenty miles an hour, hit the intestate, and came to a stop some one hundred and fifty feet farther on.  When the witness was further asked to tell about

where in the street the intestate was when he held up his hand, and how near to the rails he was, he said that he could not tell. He was not inquired of as to the intestate's subsequent movements or conduct before he was struck, and he gave no information upon that subject. The intestate's position in the street was only a short distance south of the marked poles.

Other evidence bearing upon the question of the defendant's original negligence need not be recited.

*Donald G. Perkins* and *Allyn L. Brown,* for the appellant (plaintiff).

*Michael Kenealy,* for the appellee (defendant).

PRENTICE, J. The plaintiff assumed the burden of establishing by a preponderance of evidence the defendant's negligence and her intestate's freedom from contributory negligence. If she failed to present, in support of each of these two propositions, substantial evidence which should be weighed and considered by the jury, and upon which it reasonably might have reached affirmative conclusions, the nonsuit was properly granted. *Booth* v. *Hart,* 43 Conn. 480, 484; *Foskett & Bishop* v. *Swayne,* 70 Conn. 74, 75, 76, 38 Atl. 893. The evidence presented must have been such as to furnish a more substantial basis for a conclusion than a mere guess, surmise, or conjecture. *Mesite* v. *Connecticut Co.,* 82 Conn. 403, 405, 74 Atl. 684; *Fay* v. *Hartford & Springfield Street Ry. Co.,* 81 Conn. 330, 335, 71 Atl. 364. The plaintiff was bound to remove the issues from the realm of speculation, and to establish facts affording a logical basis for the inferences which she claimed. *Morse* v. *Consolidated Ry. Co.,* 81 Conn. 395, 399, 71 Atl. 553.

It may be assumed, in accordance with the plaintiff's contention, that evidence was presented from which the

jury reasonably might have found the defendant negligent in the premises. It is clear that it could not have been so found that the plaintiff's intestate was free from contributory negligence. Plaintiff's counsel make no claim to the contrary. They rest their contention that a prima facie case was made out entirely upon an appeal to the doctrine of supervening negligence as recognized and defined in *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888; *Carroll* v. *Connecticut Co.*, 82 Conn. 513, 515, 74 Atl. 897; and *Elliott* v. *New York, N. H. & H. R. Co.*, 83 Conn. 320, 323, 76 Atl. 298.

A successful appeal to this doctrine imposes upon the plaintiff the duty of showing that the defendant's servant, the motorman, failed to exercise reasonable care and prudence to save the intestate from harm after the peril of the latter became, or in the exercise of due care ought to have become, known to the former, when by the exercise of such care on the part of the former the intestate would not have been injured. *Elliott* v. *New York, N. H. & H. R. Co.*, 83 Conn. 320, 76 Atl. 298. A prima facie case, which rested upon this contention, could not be made out until evidence pertinent to this line of inquiry was adduced which furnished some basis for a conclusion more substantial than a guess or surmise. The conduct of the parties is to be considered, and its character as related to prudence determined, in view of the situation presented and with which the actors were respectively confronted. Until there was something substantial before the jury to enable its members to discover what these circumstances were, they would be left with nothing to afford them a reasonable guide in the inquiry they were called upon to make. This was the situation in which the plaintiff's evidence left her case as touching any claim of supervening negligence on the part of the defendant. What the circumstances demanded of the motorman for the intestate's

protection depended upon the latter's position and movements at and after the time he signaled the car, then three hundred feet or more away. Upon this vital point the evidence was wholly uninforming, beyond the fact that he was in the street when he gave his signal. There were eighteen feet of roadway between the curb and the easterly or nearest rail. Where, in this width of street, and how near to the rail, he was at this time, the only witness to the occurrence which the plaintiff produced said that he did not know, and, as to the intestate's subsequent conduct or movements as the car approached, there was not a word of testimony, direct or circumstantial, beyond the fact that somehow and at some time he came into a position in close enough proximity to the rail to be struck. It may have been, for aught that appears, that he was not in a position of danger until the moment before he was hit. It may have been that the final act of negligence which was the proximate cause of the accident was that of the intestate in moving forward into a position of danger when the car was already upon him, and when the motorman was helpless to avert the result. *Elliott* v. *New York, N. H. & H. R. Co.*, 83 Conn. 320, 325, 76 Atl. 298. It is possible to build up speculative theories, but they can rest upon no substantial foundation furnished by the evidence.

It may be suggested that the failure of the motorman to turn off the searchlight when he saw, or ought to have seen, the intestate in the street intending to board the car, imports a factor into the situation which materially changes it. Of this claim it is to be noted, in the first place, that it carries the case entirely outside of the complaint, which charges no negligence arising from the use or operation of this light. Moreover, it is apparent, in view of the uncertainty in which the plaintiff left the situation as to the intestate's position and movements, that this claim can have no substantial basis,

unless it be held that the failure, under all circumstances, to turn off such a light when a person ahead exhibits his intention to become a passenger, is negligent conduct in itself. For such a sweeping claim the evidence which the plaintiff produced, including that of her experts, furnished no substantial basis. In fact, the only expert to whom her counsel ventured to ask a question relating to this particular matter, discountenanced any such practice in the case of persons preparing to board a car in the ordinary way.

There is no error.

In this opinion the other judges concurred.