Joseph Boville *v.* Dalton Paper Mills.

Special Term at St. Johnsbury, April, 1912.

Present: Rowell, C. J., Munson, Watson, Haselton, and Powers, JJ.

Opinion filed December 23, 1912.

*Pleading — Specifications — Sufficiency — General Assumpsit —
Abandoned Contract—Principal and Agent—Declarations of
Agent—Implied Preliminary Finding—Evidence—Contract-
ing One's Own Witness—Logging Contracts—Construction
—Estoppel—Acquiescence—Damages—Motion in Arrest—
Scope of—Exceptions—Objection Not Made Below—Judi-
cial Admissions—Waiver by Failure to Demur.*

Plaintiff's specifications in assumpsit are not a nullity merely because
the aggregate thereof exceeds the *ad damnum*, and so, where no
motion for further specifications was filed, defendant could not
ignore them as regards the rule requiring a demurrer to be filed
within ten days after the filing of specifications.

One may recover under the common counts in assumpsit for work
done under a special contract that he has been compelled to
abandon by the non-performance of defendant.

Error, if any, in allowing plaintiff to testify to a declaration of a third
party that designated papers had been sent to a specified place was
harmless to defendant, where it appeared that they were in fact
sent there.

In assumpsit involving the issue whether a copy of the agreement for
the performance of work by plaintiff was signed by defendant,
evidence that the overseer employed by defendant to have over-
sight of plaintiff's work had possession of the copies of the agree-
ment between the time when they were ready for execution by de-
fendant's attorney and the time when, after he had brought them
to plaintiff and obtained his signature thereto, they were returned
to defendant for its signature, and that thereafter one of them
with an additional signature was returned by the overseer to
plaintiff, who could not read, tends to show that the overseer was
acting for plaintiff regarding the execution of the papers and in

the delivery of an executed contract, so as to authorize the admission against defendant of the overseer's statement, made when he returned the copy to plaintiff, that the additional signature was that of defendant.

To account for his not having the copy of his agreement with defendant, which plaintiff claimed had been signed by defendant and delivered to plaintiff by defendant's agent, and to sustain his claim as to the number of copies made, plaintiff was properly allowed to testify that such agent borrowed from plaintiff his copy of the contract, with promise to return it soon, and that he never saw it afterwards.

Where declarations of an agent are offered in evidence the question whether he was in fact an agent is a preliminary one for the trial court, and the admission of such declaration, after a discussion in which its admissibility was treated as depending on the fact of agency, involved an implied preliminary finding of the requisite agency.

Where defendant claimed that plaintiff's failure to float his pulp wood through in high water, under his contract with defendant, was not, as plaintiff claimed, because of the insufficiency of dams that defendant was to maintain, but because plaintiff neglected the contract to work for another, plaintiff, to explain that conduct, was properly allowed to testify that he had to wait until the drive of another party went by the mouth of the stream, and that his work for another was to help get that drive out of the way.

A party is not concluded by the testimony of his witness, but may show the contrary by other witnesses.

In assumpsit for work done under a special contract that plaintiff claimed he was compelled to abandon because of defendant's non-performance, though plaintiff did not in terms testify that he was compelled to abandon the contract by defendant's failure to pay as agreed, *held* that the evidence was sufficient to show it.

In assumpsit for work done under a contract whereby plaintiff was to log for defendant corporation, it to "repair the dams as now existing," and that work "to be done as directed by" its agent, an instruction that the contract meant that defendant should repair the dams then in existence in a reasonably careful and prudent manner was sufficiently favorable to defendant.

Under a declaration consisting of the common counts in assumpsit and a special count relying on a written contract whereby plaintiff agreed to log for defendant, and which, after he had partly per-

formed, his evidence tended to show he was compelled to abandon because of defendant's non-performance, where plaintiff conceded that he could not recover on the ground that the parties had entered into an express contract unless a written contract signed by defendant was shown, but he did not confine his claim of recovery on that ground, he could recover under the common counts on the ground that there was an express contract between the parties which he had been prevented from fully performing by defendant's non-performance, or on the ground that he had performed labor at the request and for the benefit of defendant without any express contract.

Where plaintiff could not read and defendant engaged him to do certain work, and prepared a written contract that plaintiff signed, but defendant did not, and did not inform plaintiff of that fact, and plaintiff went on with the work in accordance with the terms of the prepared contract, and every act of defendant in connection with it was calculated to lead plaintiff to suppose he was proceeding under the contract, defendant cannot claim the benefit of the rule which measures the value of plaintiff's services by the benefit that defendant receives therefrom.

In assumpsit for work done under a written contract that plaintiff was compelled to abandon because of defendant's non-performance, no loss that defendant sustained because of plaintiff's failure to perform any part of the contract that he was prevented from fulfilling by defendant's non-performance should be applied in reduction of plaintiff's claim.

Where plaintiff was performing an entire contract by which he was to deliver pulp wood at defendant's mill, plaintiff had the right to do the work in any manner that did not injure the stock, and with the assumption that his performance of the contract would not be prevented by any act or default of defendant.

Plaintiff's testimony that the difficulty in driving the pulp wood was that the dam was "no good," and that if the dam had been good all the wood would have been down to defendant's mill in 15 or 16 days, does not mean that his only reason for abandoning his contract of driving the pulp wood was that the dam was no good, but is no more than saying that good dams might have prevented the conditions that made fatal defendant's delays in making payments under the contract.

It is not error for the court to make use of evidence admitted without objection.

A motion in arrest reaches only defects apparent on the face of the strict record, and so can reach neither the specifications nor matters shown only by a transcript of the evidence.

A statement in a bill of exceptions of the objection made to a ruling below implies that no other objection was made, and an exceptor will be confined in this Court to the objections he made below.

A provision that the thing contracted for shall be to the satisfaction of the purchaser or recipient is but an enlargement of the obligation assumed; but a provision that the performance of a stipulation shall be to the satisfaction of the party who is to perform it, or of his servant who is to do the work, is a limitation on, if not destructive of, the obligation otherwise assumed, and should be given that effect only when that intention is evidenced by a plain and definite provision.

Where defendant engaged plaintiff to do certain work, and agreed to provide designated facilities essential thereto, "all of which is to be done as directed by the agent of the party of the second part," who is defendant, the quoted provision is not sufficiently explicit to subject plaintiff's contractual rights to any curtailment by the action of defendant's agent.

Plaintiff's motion for the filing of the contract "whereon his cause of action is based," made before trial and only to secure the possession and inspection of the contract in preparation for the trial, is not a judicial admission that his cause of action was based solely on an express contract.

Defendant cannot go to trial without having demurred to the declaration, and defeat the result of the trial for any defect of the declaration insufficient to sustain a motion in arrest.

GENERAL AND SPECIAL ASSUMPSIT. Plea, the general issue with notice. Trial by jury at the October Term, 1911, Essex County, *Butler*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion sufficiently states the case.

*George L. Hunt* for the defendant.

*Harland B. Howe, Samuel E. Richardson* and *Harry W. Witters* for the plaintiff.

MUNSON, J.   The declaration is in assumpsit, and consists of the common counts and one special count.   The plaintiff's specifications were filed June 21, 1911.   The defendant filed a demurrer to the declaration on the first day of the October Term. The rules require that a demurrer be filed within ten days after the filing of specifications, and the court dismissed the demurrer as filed out of time.   Defendant contends that the paper filed June 21 was not a specification, and that it was not required to file its demurrer any earlier than it did.   The *ad damnum* in the writ was $3,000, but the items of the specification amounted to nearly $5,000; and it is argued from this that the specifications are outside the scope of the pleading and constitute a variance.

It cannot be said that the discrepancy between the *ad damnum* and the total of the items specified made the specifications a nullity.   The larger total of the specifications did not require the conclusion that the plaintiff's claim was anything different from what it was specifically stated to be, or anything inconsistent with the amount of the *ad damnum*.   It is not essential to the sufficiency of a bill of particulars that it contains matters which afford a defence or offset for the adverse party.   31 Cyc. 566, and cases cited.   Moreover, no motion for a further specification was filed; and it has been held that if the adverse party does not apply for a further or more specific bill of particulars he cannot ignore the bill furnished and proceed as if none had been filed, unless bad faith is shown in respect to the original bill.   31 Cyc. 581; citing *McCarthey* v. *Mooney*, 41 Ill. 300; *Davis* v. *Johnson*, 96 Minn. 130, 104 N. W. 766; *Purdy* v. *Warden*, 18 Wend. 671; *Bates* v. *Wotkyns*, 2 How. Pr. 18.

The special count alleged an express contract, partial performance by the plaintiff, and a breach by the defendant which prevented plaintiff's further performance.   Before any evidence was introduced, defendant moved that the plaintiff be required to elect whether he would stand on the common counts or the special count, and the plaintiff thereupon elected to proceed under the common counts.   The plaintiff introduced evidence tending to show that he had a contract for doing the work covered by his specification at agreed prices, by which he was to receive payment on the fifteenth day of each month for the work done the previous month; evidence tending to show that the defendant failed to make these payments in accordance with the

agreement; and evidence which it is claimed tended to show that this made it impossible for the plaintiff to complete his undertaking. The evidence regarding the defendant's failure to pay was excepted to as immaterial in view of the plaintiff's election to stand on the common counts. In connection with this exception the defendant cites *Myrick* v. *Slason*, 19 Vt. 121; *Camp* v. *Barker*, 21 Vt. 469. Neither case presents the question arising here. It is the uniform holding of our cases that one may recover under the common counts for work done under a special contract which he has been compelled to abandon by the nonperformance of the other party. Of these cases reference may be had to *Chamberlain* v. *Scott*, 33 Vt. 80; *Davis* v. *Streeter*, 75 Vt. 214, 54 Atl. 185.

The inquiries of defendant's counsel and the replies of his witnesses both recognized the fact that there was an agreement between the parties as to the work to be done and the terms of payment. But the defendant claimed that there was no written contract, and excepted to evidence introduced by the plaintiff to show that one was prepared and signed. In its charge to the jury the court said: "I understand it to be conceded that the writing must have been signed by the parties in order to constitute an express contract," and that "otherwise the plaintiff must rely upon an implied contract"; and it does not appear that any suggestion to the contrary was made by counsel. In line with this understanding, the court instructed the jury that the plaintiff could recover either on the ground of an express contract or on the ground of an implied contract; that to establish the first ground the plaintiff must show that there was an express contract between him and the defendant, that such contract was signed by the defendant, that plaintiff did not voluntarily abandon the contract, and that defendant by its acts or default prevented him from completing it; and that if the plaintiff failed to establish any of these things he could not recover on the ground of an express contract. One ground of the defendant's motion for a verdict, as orally developed in a discussion between court and counsel, was that there was no evidence in the case tending to show that the defendant ever signed a contract with the plaintiff. The question whether there was such evidence involves an inquiry as to the relation sustained to the

defendant by J. H. Beattie, a deceased employee, and the consequent admissibility or inadmissibility of his declarations.

The plaintiff claimed that the defendant had or had had in its possession a type-written agreement signed by both parties; and he procured an order in advance of the trial under which the defendant filed in court a type-written paper signed by the plaintiff alone. The plaintiff introduced this and two other identical papers, one of which bore the signature of the plaintiff, but neither of which was signed by the defendant. These were received in connection with evidence which it was claimed tended to show that there was a fourth impression, which had been signed by the defendant and delivered to the plaintiff and afterwards obtained from the plaintiff by Beattie. The defendant claimed, and there was evidence tending to show, that only three impressions were made. The ones produced were received in evidence against the objection that no contract had been executed by the defendant, and that in any event the contract was immaterial.

This outline of the positions taken regarding the contract will serve to indicate the bearing and importance of the various features of the testimony; and the case which the testimony tends to establish must now be stated with sufficient fullness to afford a basis for the disposition of the several exceptions relied upon.

The defendant is a corporation located at Portland, Maine, and owning timber lands in Lemington and Averill in this State. Its president and treasurer, and most if not all its directors, resided in Portland. It operated a pulp-mill at Fitzdale in this State, and had a general manager who resided there. The arrangement with the plaintiff was made by E. J. Parsons, an agent of the defendant, and the writing was prepared by Porter H. Dale, the defendant's attorney. Parsons lived at Island Pond, and had general charge of the defendant's operations in the woods, reporting to and receiving his instructions directly from the company. He had authority to engage some one for the immediate oversight of the plaintiff's work, and employed J. H. Beattie for this service. The contract as prepared names Beattie as the defendant's agent, and provides that the plaintiff shall conduct all his operations as Beattie may direct. Beattie was engaged for this service before the writing was pre-

pared, and he acted for the defendant in connection with plaintiff's operations until his death. The plaintiff lived at Bloomfield in this State. Parsons had an impression that he signed the papers at Island Pond, but was very doubtful about it. Plaintiff's signature was witnessed by J. H. Beattie and plaintiff's daughter. Plaintiff testified that Beattie brought the papers to him at Bloomfield, and that the number of papers signed was three; that after he had signed them Beattie took them away, saying he was going to send them to Portland to be signed; that Beattie brought one back soon after and handed it to plaintiff, saying: "There is your contract"; that plaintiff cannot read written English, but that he looked at the paper and saw that it was signed by two names, and that Beattie said it was the signature of the defendant; that Beattie afterwards came and asked for the paper, saying he would return it soon, and that he gave it to Beattie and had not seen it since. Parsons testified that there were but three copies, and that the two signed by the plaintiff (Exs. 1 and 3) were sent to Portland for the signature of the defendant, and were never returned to him; that he learned soon after that the defendant had refused to sign the paper, but never informed the plaintiff of this fact; and testified further that he retained the copy that was not signed (Ex. 2) and kept it in his possession until Beattie asked for it as a memorandum to guide him in looking after the work, and that when Beattie's papers relating to the job were sent to him after his death he found this copy among them, and had had it in his possession since. The defendant produced C. G. Allen, who was a director of the company but not an officer of it; and he testified that one of these copies was submitted and considered at a directors' meeting, and that the result of the discussion was that the contract was not signed—that there was no authorization for the signing. The records of the company were not produced, and no officer of the company was called; and it did not appear what the powers of its officers were, nor what authorization was necessary. The agreement as drawn called for a cutting expected to extend over two or three years, and contained particular requirements and restrictions regarding the manner of cutting, with provisions for a compensation payable in monthly installments depending on the progress of the work, and for the building and repair of certain dams by the defendant. The conduct,

claims and waivers of the parties as the work proceeded had constant reference to the provisions of an existing agreement. The court said in its charge, without any suggestion of objection, that it had not heard in argument any question but that the writing expressed the understanding existing between the parties. The only reason given by the defendant for not signing the contract was that the directors did not wish to assume an uncertain expense in the building and repair of dams. It did in fact build and repair the dams specified in the writing, but the repairs of the existing dams were claimed to be insufficient.

Defendant excepted to the plaintiff's testimony regarding the declarations made by Beattie as immaterial and incompetent. The plaintiff's testimony and the names of the witnesses to his signature tend to show that the papers were brought to him for signature by Beattie. The statement that they were to be sent to Portland must be regarded as harmless, for they were in fact sent to Portland after being signed by the plaintiff. The possession of the papers between the time when they were completed for signature and the time when they were sent to Portland, was in itself evidence tending to show that Beattie was acting regarding the execution of the papers in conjunction with Parsons. The testimony of the plaintiff, irrespective of the declarations of Beattie, tends to show that one of the copies was returned to him by Beattie with an additional signature. Upon the theory of the case presented by plaintiff's testimony, the copies sent to Portland must have been returned directly to Beattie, for Parsons testified that he never saw the copies that were sent to Portland after they went there. So Beattie's possession of the paper at this time would be evidence tending to show that he was acting for the company in the delivery of an executed contract. In these circumstances the accompanying statement that the additional signature was that of the company cannot be held to have been unauthorized. The further statement of the plaintiff that Beattie afterwards borrowed the contract, saying he would return it soon, was legitimate evidence to account for his failure to have the copy, and to sustain his claim as to the number made.

The defendant argues that this evidence was admitted without any preliminary finding as to Beattie's agency, and that

this was error.   It is held that this is not a question for the jury, but one to be determined by the court.   *Cairns* v. *Mooney,* 62 Vt. 172, 19 Atl. 225; *Dickerman* v. *Quincy etc. Ins. Co.,* 67 Vt. 609, 32 Atl. 489.   The court did not submit this question to the jury, and it did not expressly find the fact of agency.   But the evidence of what Beattie said when he brought back the contract was received after a discussion in which the admissibility of Beattie's statements was treated as depending upon the fact of agency, and its allowance thereafter was an implied finding of authority.

It was not error to permit the plaintiff to testify regarding certain work done elsewhere that he had to wait until the Van Dyke drive went by the mouth of the Brouillard Brook, and that he was there helping Van Dyke to get out of his way.   An affidavit which the defendant was to use by agreement tended to show that the plaintiff's failure to get the pulp wood through in high water was not because of the insufficiency of the dams, but because he neglected this contract to work for another party. The plaintiff's evidence tended to explain a course which might otherwise have operated to the prejudice of his claim.

The defendant moved for a verdict on the ground that Parsons, the plaintiff's first witness, testified on direct examination that the papers marked Exhibits 1 and 3 were the only contract signed by the plaintiff, and that the plaintiff was bound by such evidence, and that consequently there was no available evidence tending to show that defendant ever signed a contract with the plaintiff.   The point is not well taken.   A party is not concluded by the testimony of his own witness, but may show by other witnesses that the fact is not as stated by the one first called.   *Jennett* v. *Patten,* 78 Vt. 69, 62 Atl. 33.   And if we give this branch of the motion the broader scope given it by the court below, it is apparent from the statement previously made that there was evidence tending to establish the existence of a contract signed by the defendant.

Another ground of the motion for a verdict was that the plaintiff testified that his only reason for abandoning the contract was that defendant failed to perform its agreement respecting the repair of the dams, and that there was no evidence tending to show that defendant failed to perform in that respect.   We have noticed no place, and none has been brought to our atten-

tion, where the plaintiff testified as stated in the motion.    There may not be any place where the plaintiff testified in terms that he was compelled to abandon the job by the defendant's failure to pay as agreed.    But he testified to telling Parsons that he must have his money every 15th, and that if he did not have it on the 15th he should have to quit—that he had no money to do business with.    There was doubtless evidence of the plaintiff which tended to show a waiver of strict performance in this respect, but none which sanctioned such delays as the evidence tended to establish.    It appeared that one Kugelman advanced $1,400 to pay plaintiff's men, and that the suit was brought partly for his benefit.    Among the exhibits was a letter of the defendant, dated April 29, 1910, which reads as follows: "Can't you wait ten days?    We have some money coming in then and will clean it up."

We do not consider it necessary to set forth in detail the testimony regarding the dams.    There was ample evidence tending to show that the dams as repaired by defendant were not sufficient, that they broke repeatedly while being filled, and that this seriously delayed and made more expensive the work of the plaintiff.    There was nothing in the motion for a verdict, or in the oral discussion upon it, that fairly directed the attention of the court to anything further.    But the defendant argues that by the terms of the contract it was to "repair the dams as now existing," and that the work was "to be done as directed by" its agent; that the defendant did repair the dams as they existed in accordance with the judgment of its agent, and that this relieves it from responsibility.    This question was first distinctly raised by two exceptions to the charge; in which the court said, in substance, that the contract meant that the defendant should repair the dams then in existence in a reasonably careful and prudent manner, having in view existing conditions and the use to be made of the dams.    We think the court's view of the matter as embodied in its charge was sufficiently favorable to the defendant, and that the motion for a verdict, even if treated as raising this question, was properly overruled.

The defendant excepted to the court's refusal to charge that the plaintiff could not recover unless he established the fact that there was a written contract signed by the defendant.    The plaintiff must be taken to have conceded that he could not recover

on the ground that the parties had entered into an express contract unless a written contract signed by the defendant was shown; but he nowhere confined his claim of recovery to that ground. He could recover under the common counts on the ground that there was an express contract between the parties which he had been prevented from fully performing by a failure of performance on the part of the defendant, or on the ground that he had performed labor at the request and for the benefit of the defendant where no express contract existed.

The defendant excepted to the court's failure to charge as follows: ''The law does not imply any promise on the part of the defendant to pay for services that were of no value to it, and a promise to pay is implied only so far as the services were of benefit or value to defendant. If such services were worth nothing to defendant, then plaintiff can recover nothing.'' The court instructed the jury that if the plaintiff was entitled to recover he was entitled to recover what his services were reasonably worth, and proceeded as follows: ''It is said on the part of the defendant that in view of the manner in which the plaintiff performed the work, and the way he left the pulp in the stream, his services were of no practical value. This is a matter wholly for you to consider.''

The question raised by this exception must be considered with reference to the case presented by the evidence, and the instructions previously given. Early in its charge the court said, in substance, that if a person performs valuable service for another at his request, or by his permission or consent so given as to amount to a request, and the parties to it so treat it, the law implies a promise to pay for that service what it was fairly and reasonably worth. This instruction was applicable to the case as it would stand with the written contract not established. The defendant engaged the plaintiff for this work, and prepared a written contract which the plaintiff signed. The defendant failed to sign it, but did not inform the plaintiff of that fact. The plaintiff went on with the work in accordance with the terms of the contract as prepared, and every act of the defendant in connection with it was calculated to lead the plaintiff to suppose that he was proceeding under that contract. In these circumstances the defendant cannot claim the benefit of the

rule which measures the value of the plaintiff's services by the benefit which the defendant receives.

The defendant requested a further instruction that if the defendant had suffered any damage by reason of the manner in which the plaintiff performed his work it must be applied to reduce or, if sufficient, entirely extinguish, any damages that might otherwise be found for the plaintiff. The defendant cites in support of this request *Patrick* v. *Putnam,* 27 Vt. 759. There the plaintiff was prevented from completing a contract by sickness, and in sustaining a judgment for the defendant the court said that generally one who is allowed to recover for part performance of an entire contract is liable to have the amount of his recovery reduced by the amount of the damages sustained by the other party, "unless hindered in the performance of his contract by the other party, or excused by such party." In taking their exception counsel indicated the grounds of their claim, one of which was the failure to have the wood at the mill when needed. But if the plaintiff was prevented from delivering the wood at the mill by the non-performance of a contract obligation resting on the defendant, the loss which the defendant sustained in this respect was not an element of damage which it was entitled to have applied in reduction of the defendant's claim. The further ground indicated was the increased difficulty of getting the wood because of the manner in which it was delivered at the stream. If the written agreement was established, this work was being done under an entire contract by which the plaintiff was to deliver the wood at the mill in Fitzdale; and he had a right to proceed with the work in any manner which did not injure the stock, assuming that his performance of the contract would not be prevented by any act or default of the defendant. The court so charged in effect, and no exception was taken to the instruction.

The defendant excepted to what the court said about the plaintiff's right to recover for materials furnished and delivered, saying there was no evidence which warranted the submission of such a claim. The statement complained of was contained in a recital of the common counts which the court made in opening its charge, evidently by way of indicating the nature of the action; and there was nothing in the body of the charge which could have given it any further effect in the minds of the jury.

Defendant excepted to the court's reference to a farm contract by way of illustration. The basis of its objection is that the plaintiff was insisting upon the existence of a written contract, and that no ground of recovery other than that should have been recognized. Our conclusion to the contrary has already been stated. It is objected further in support of this exception that there was no evidence tending to show that the failure to pay the monthly installments seasonably was a cause of the abandonment of the contract. Evidence which we consider to have that tendency has been pointed out.

Connected with the point just disposed of is the further exception to an instruction which permitted a recovery on the ground of a failure to comply with the terms of payment, in disregard of the plaintiff's own testimony that his only reason for leaving the work was that the dam was "no good." We think the testimony referred to is not fairly subject to defendant's construction. The plaintiff said the difficulty in driving the pulp wood was that the dam was "no good," and that if the dam had been good all the wood would have been down to Fitzdale in fifteen or sixteen days. This was no more than saying that good dams might have prevented the conditions which made the delays in payment fatal.

Defendant excepted to the court's reference to a conversation between Parsons and the plaintiff regarding prices as evidence tending to show that the hauling was worth two dollars a cord when the price assigned to that part of the work in the contract was twenty-five cents less, on the ground that the conversation occurred before the contract was written out. The evidence came into the case without objection, and it was not error for the court to make use of it. *State* v. *Jackson,* 79 Vt. 504, 511, 65 Atl. 657, 8 L. R. A. (N. S.) 1245.

The remaining exceptions are to the overruling of a motion in arrest of judgment. The substance of the motion is that the declaration contains inconsistent and repugnant causes of action. A motion in arrest reaches only defects apparent of record. *Trow* v. *Thomas,* 70 Vt. 580, 41 Atl. 652. The specifications are not a part of the record for the purposes of pleading. *Alexander* v. *School District,* 62 Vt. 273, 19 Atl. 995. The face of the declaration discloses no misjoinder of actions. A special count in assumpsit may be joined with the common counts. 4

Cyc. 345; *Carland* v. *Western Union Tel. Co.*, 118 Mich. 369, 76 N. W. 762, 43 L. R. A. 280, 74 Am. St. Rep. 394. The defendant relies upon matters which appeared on the trial as shown by the transcript; but a motion in arrest cannot be thus sustained. *Walker* v. *Sargeant*, 11 Vt. 327; *Morgan* v. *Hendrick*, 80 Vt. 284, 67 Atl. 702.

*Judgment affirmed.*

### MOTION FOR REHEARING.

After the delivery of the above opinion, but at the same term, the defendant moved for a rehearing; and entry of judgment was thereupon stayed and the case entered with the court; and now, in vacation, counsel submit a brief in support of the motion.

In disposing of the defendant's claim that the court below erred in dismissing its demurrer, two points were covered. Defendant's brief contained the following additional point: "Aside from the matter of specifications, the docket entries and files," "show that on no other ground could it be held that defendant's demurrer was filed out of time." The defendant now suggests that the court failed to apprehend and consider its claim, orally made under this point, that its demurrer was seasonably filed because filed immediately after the court had allowed an amendment to the declaration which, upon the filing of the demurrer, it permitted to be withdrawn. The exceptions state that the defendant claimed that the paper filed was not a specification within the rule, and that consequently its demurrer was not filed out of time. This implies that no other objection to the dismissal of the demurrer was made; and it will not be necessary to consider the point now urged, for we could not properly hold that the dismissal was error on a ground not covered by the objection made.

The defendant insists that the court erred in its conclusion that there was evidence tending to show an authority in Beattie which gave admissibility to his declaration made in connection with the delivery of the writing as testified to by Boville. But after giving careful consideration to counsel's analysis of the argument and the authorities cited, we think our conclusion was

justified by the evidence, and leave the matter as presented in the original opinion.

The point is made that there is no basis for assuming an implied finding of Beattie's agency by the trial court, because that court has expressly referred the scope and extent of Beattie's authority to the decision of this Court. But the only question presented by the exceptions, upon a fair construction of its language, is whether there was any evidence tending to show such an agency as justified the admission of the declarations.

It is claimed further that the discussion regarding the admissibility of this evidence was limited to the claim of plaintiff's counsel that the contract itself made Beattie the defendant's agent. It is true that plaintiff's counsel repeatedly assumed that Beattie's agency was shown by the insertion of his name in the contract prepared, but a remark made by the court during the discussion indicates plainly enough that it did not accept this view. Evidence was offered and admitted which legitimately tended to establish the required agency; and there is nothing to show that the court based its admission of the declaration upon anything else.

It is claimed that the court erred in its holding regarding the duty which the contract imposed upon the defendant respecting the dams. The defendant relies upon *Vanderwerker* v. *Vermont Central R. R. Co.*, 27 Vt. 130, which was a suit to recover for work done in the construction of defendant's road under a contract which provided that the defendant's engineer should be the sole judge of the quality and quantity of the work, and that from his decision there should be no appeal. The defendant also relies upon a line of our cases in which the agreement was to furnish articles to the satisfaction of the purchaser. A provision that the thing contracted for shall be to the satisfaction of the purchaser or other recipient is but an enlargement of the obligation assumed. A provision that the performance of a stipulation shall be to the satisfaction of the party who is to perform it, or of his servant who is to do the work, is destructive of, or at least a limitation upon, the obligation otherwise assumed. If this doctrine of satisfactory performance is to be extended to cases of the latter class, it certainly is not too much to say that its application should be confined to cases where the intention of the parties is evidenced by a plain and definite provision. Here,

the defendant engages the plaintiff to do certain work, and agrees to provide certain facilities essential to the work. The clause in question reads: "All of which is to be done as directed by the agent of the party of the second part." We considered, and still think, that this language is not sufficiently explicit to subject the contractual rights of the plaintiff to any curtailment by the action of defendant's agent.

The defendant suggests that the Court overlooked its claim that the plaintiff's motion for the filing of the contract "whereon his cause of action is based" was a judicial admission that his cause of action was based on an express contract. This claim was not specially mentioned because it seemed to be adequately met by the view taken regarding the bases of recovery. But an independent answer can be given. The paper containing this expression was not submitted during or for the purposes of the trial, but to secure the possession and inspection of the writing in preparation for the trial.

No separate treatment was given to the point in which counsel barely suggested the comprehensive effect of an exception to the judgment. The defendant now contends that an exception to the judgment raises every question necessary to be decided in order to render a valid judgment; that the specifications, if not a part of the record for the purposes of a motion in arrest, may be looked into in considering an exception to the judgment; and that it thus appears that this declaration sets up two distinct and repugnant causes of action, on which no valid single judgment can be rendered. The defendant seeks by this argument to place itself in the position it would have occupied if there had been an overruled demurrer to the declaration. But a defendant cannot be permitted to go to trial without having demurred to the declaration, and defeat the result of the trial for any defect of the declaration not sufficient to sustain a motion in arrest. *Hoskinson* v. *Central Vt. R. R. Co.*, 66 Vt. 618, 30 Atl. 24.

*Motion for rehearing denied, and judgment entered for the plaintiff.*

WATSON and POWERS, JJ., dissent.