## FRANK L. WELLMAN, ADMR. v. ROWE WALES.

February Term, 1925.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 6, 1925.

*Plaintiff in Supreme Court Bound by His Theory of Case Below —Burden of Proof in Automobile Negligence Case—Defendant's Evidence Available to Show Plaintiff's Freedom from Contributory Negligence—Impeachment of Party's Own Witness—Conflicting Evidence on Material Fact for Jury— Evidence Insufficient to Support Verdict—Evidence of Witness Contrary to Physical Facts—Judicial Notice of Physical Facts Before Court and Natural Laws—When Testimony of Witness as to Fact May Be Disregarded—Inferences Cannot Be Based on Other Inferences—Necessity of Showing Proximate Cause Although Prima Facie Negligence Established—Insufficiency of Evidence to Support Plaintiff's Verdict—Character of Evidence Entitling Plaintiff to Go to Jury—When Motion for Directed Verdict Should Be Sustained.*

1.  Plaintiff, in Supreme Court on exceptions to granting by trial court of defendant's motion for a directed verdict, must succeed, if at all, on theory on which he relied in lower court, as Supreme Court will not search record for grounds of reversal.
2.  In action of tort to recover for death alleged to have been caused by automobile colliding with bicycle on which decedent was riding, plaintiff *held* to have burden of proving that decedent's injuries resulted from collision with automobile; that defendant was operating automobile; that collision proximately resulted from defendant's negligence; and that decedent was free from contributory negligence.
3.  In such action, testimony of defendant *held* available to show plaintiff's freedom from contributory negligence.
4.  A party is not bound by the statement of his witness, but may always show the fact as it is.
5.  In action for death of bicyclist alleged to have been caused by collision with an automobile, where evidence was conflicting

as to where defendant, while operating his automobile, overtook and passed decedent, question was for jury.

6. Evidence which merely makes it possible for fact in issue to be as alleged, or which raises a mere conjecture, surmise, or suspicion, is an insufficient foundation for a verdict.

7. Testimony of witness concerning an exhibit, contrary to physical facts demonstrated by such exhibit, should be disregarded.

8. In giving plaintiff's evidence the favorable construction to which it is entitled on defendant's motion for a directed verdict, court will not disregard operation of natural laws of which it may take judicial notice, nor ignore physical facts before it.

9. Though one or more witnesses testify that a thing is so, such testimony will not be given credence when indisputable evidence to the contrary is before court.

10. No inference can legitimately be based upon a fact the existence of which itself rests upon inference.

11. In action of tort for death of bicyclist alleged to have been caused by collision with an automobile, that speed of automobile was such as to make it *prima facie* evidence of negligence under G. L. 4697, does not relieve plaintiff from necessity of showing that such speed was the proximate cause of the accident.

12. In such action, evidence of defendant's negligence *held* insufficient to support a plaintiff's verdict.

13. Mere scintilla of evidence supporting plaintiff's case is not sufficient to send case to jury.

14. To entitle plaintiff in negligence case to go to jury, the evidence must be of such quantity and character as to justify jury, acting reasonably, to predicate a verdict thereon in favor of party having burden of proof.

15. Motion for a verdict is to be granted whenever it would be court's duty, in exercise of a wise judicial discretion, to set aside a contrary verdict if rendered.

ACTION OF TORT for negligence. Plea, general issue. Trial by jury at the June Term, 1924, Windsor County, *Thompson, J.,* presiding. Defendant's motion for directed verdict granted, and judgment on such verdict. The plaintiff excepted. The opinion states the case. *Affirmed.*

*Barber, Barber & Miller* and *Raymond Trainor* for the plaintiff.

· *Stickney, Sargent & Skeels* and *Walter S. Fenton* for the defendant.

POWERS, J.   When this case was remanded under the re-script in *Wellman, Admr.* v. *Wales,* 97 Vt. 245, 122 Atl. 659, the defendant sought and was granted a change of venue, and the retrial was in the Windsor county court.   At the close of the plaintiff's evidence, the defendant moved for a directed verdict. This motion was granted and the plaintiff excepted.   This ex-ception presents the only question relied upon in this Court.

Though the evidence now before us is largely like that in the previous record, it is quite different in some important par-ticulars.   The statements made by the decedent as to how he re-ceived his injuries are not in this record.   In other respects, the evidence in this trial differs from that in the other, as will here-inafter appear.

[1]   The theory on which the plaintiff now puts his case is entirely different from the one before presented.   He now claims that the defendant, driving at unlawful speed, in attempting to pass the decedent on the left, so carelessly handled his car that the hub cap on one of the right-hand wheels caught the lamp on the bicycle and set in motion the train of events that finally resulted in the fatal injuries suffered by the decedent.   It is upon this theory that the plaintiff must succeed, if he succeeds at all, for we do not search the record for grounds of reversal. · *McClary* v. *Hubbard,* 97 Vt. 222, 122 Atl. 469.

[2]   When the case was here before, we held in substance that the plaintiff carried what Prof. Wigmore would call the "risk of persuasion" on four essential facts:   (1) That the de-cedent's injuries resulted from a collision with an automobile; (2) that the defendant was operating the automobile; (3) that the collision proximately resulted from the defendant's negli-gence; (4) that the decedent was free from contributory negli-gence.

This situation was not changed on the retrial, except, as we shall see, the first and second questions may now be treated as one.   The plaintiff carried the burden as before.   So far as the question of contributory negligence is concerned it may be quickly disposed of, and we will take it up at this point.

[3, 4]   The defendant, being called to the stand by the plaintiff, testified to the effect that, going north at the rate of

about 30 miles an hour, he passed the decedent on the left, that the latter was then well out on the right-hand side of the road, and that he was then riding carefully and leaving an abundance of room for the defendant to pass in safety.

Here, then, is evidence to clear the decedent from contributory negligence, if it is available to the plaintiff. And it is so available, for he was not bound by the defendant's statement as to where he passed the bicycle. This is so, not because the defendant was his own witness on that point (as the plaintiff claimed below), but because a party is not bound by his witness' statement and may always show the fact as it is. *Cox* v. *Eayres,* 55 Vt. 24, 45 A. R. 583; *Jennet* v. *Patten,* 78 Vt. 69, 62 Atl. 33; *Boville* v. *Dalton Paper Mills,* 86 Vt. 305, 85 Atl. 623.

[5]   That there was evidence tending to show that the defendant actually overtook the bicycle north of the top of the Weeden hill cannot be denied. The testimony of Porrette so tended. That of Rattery, the painter, was to the same effect, though it was to be weighed in the light of the fact that he testified at the first trial that he didn't know which way the automobile he heard was going. There being a conflict in the evidence as to where the defendant passed the decedent, it was for the jury to say. And if it found that it was at the point of the iron pin (which marked the place of the accident), it could apply the whole of the defendant's statement there, for he testified that he only passed the decedent once on that trip.

[6]   Turning now to the other essential elements of the plaintiff's case as recorded above, was the decedent injured by an automobile? On this point, as we have already seen, the plaintiff did not have the benefit of the decedent's statement; but the other evidence specified in our former opinion was substantially the same at his trial. Taken alone, it could not support a finding in the plaintiff's favor. The simple fact that an automobile *could* cause such injuries would not, alone, warrant a finding that it *did.* Evidence which merely makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise, or suspicion, is an insufficient foundation for a verdict. *Kruck* v. *Conn. Co.,* 84 Conn. 401, 80 Atl. 162; *Theobald* v. *Shepard Bros.,* 75 N. H. 52, 71 Atl. 26; *Scott* v. *Boyne City, etc., Co.,* 169 Mich. 265, 135 N. W. 110. Or, to state it as we did in our former opinion, the inference from the facts proved must be "at least the more probable hypothesis, with

reference to the possibility of other hypotheses.'' But we will assume that this evidence when taken with the evidence under the second element of the plaintiff's claim, to which we are about to refer, makes a situation, under which we cannot say as a matter of law that a conclusion that an automobile was responsible for the decedent's injuries would be unwarranted.

As to the evidence of the defendant's connection with the accident, it is enough here to say that what appears on pages 250 and 251 of the report of our former decision, under subdivision (a) is equally true here and may be adopted as correct without repetition; and we will assume that it must be held that the facts recited there and adopted here tend to show that the defendant's car collided with the decedent's bicycle. These assumptions do not amount to piling one inference on another as the defendant says; the question whether the decedent was hit by an automobile and the question whether the defendant was driving that car are not in reality two questions, but as the case is now presented one, only. As the evidence stands, if the bicycle was hit by an automobile, it must have been hit by the defendant's automobile, for no other car was on that road in that vicinity. This brings us to the question of the defendant's negligence, the most difficult and important question in the case.

The defendant testified that the road at the point where he passed the decedent was wide and smooth and that there was no deviation in the course of the bicycle; that it kept going straight ahead, and there was nothing to prevent his passing safely.

It is apparent that any such collision between these vehicles as the plaintiff claims would be impossible if they were travelling on parallel lines. The overhang of the fenders and running board of the automobile, and the projection of the handle bars and pedals of the bicycle, to say nothing of the arm and leg of the decedent, would prevent it. As the testimony stood, the only rational theory on which such a collision could be worked out is that the automobile veered to the right at a time and in such a way that its front wheel passed without interference, but the rear hub cap caught the lamp.

The lamp itself is such a vital factor in the plaintiff's theory, that a description of it and its present condition is required. It is sometimes spoken of in the evidence as a lantern. It is a bulls-eye, acetylene gas lamp, put out under the tradename ''Solar,'' made to be mounted on the fork or on the steer-

ing column of the bicycle as desired. It can be mounted on either prong of the fork, but the evidence tended to show that it was attached to the left prong at the time in question. It is attached by means of a clamp operated by a wing nut, and when on the fork extends therefrom a total distance of about 4½ inches. The clamp is at one end of an arm, the other end of which is connected to the back of the lamp by a device containing two joints: One allows the lamp to be turned to the right or left without interfering with the clamp; the other allows it to be tilted up and down. Under the lamp proper, and made integral with it, is a cylindrical cup, sometimes spoken of as the "container," about 2½ inches in diameter and of about the same depth, which carries the carbide; and attached to the rear of the lamp and overhanging the cup is the little tank that carries the water which feeds down into the carbide producing the gas that gives the light. The clamp is about 3¼ inches long over all; and the round opening in it designed to clasp the steering post when mounted thereon was at the time here in question and now is "plugged" with a piece of wood which tends to prevent the jaws of the clamp from closing as completely as they otherwise would. On the rear and near the top of the cup is a dent, which the plaintiff says was made by the hub cap when the collision took place. This dent slants across the back of the cup, the lowest part of it being to the left, and it extends upward and to the right until at its right end it involves the whole width of the top rim which joins the cup to the lamp itself, and down back of which hangs the joint and wing nut that allows the lamp to be tilted as above stated. In its deepest place the dent is ⅕ of an inch in depth.

The prongs of the bicycle fork are about 15 inches long; they are about 3 inches apart at the axle of the wheel, and about 2 inches at the top where they join. They are made of tapering metal somewhat flattened on the sides, smaller at the lower end and growing wider from there up.

[7-9] The witness Sumner testified that, owing to the wooden plug in the clamp and the taper of the prong, the lamp would have to be attached to the prong at a point approximately 7 inches above the axle of the front wheel. The establishment of this as a fact was vital to the plaintiff's case. Its importance lies in the fact that it would fix the lamp at just the right height from the ground to be caught by the hub cap of a car

like the defendant's; and without this testimony, the case would be without proof on that subject. Judge Doe is authority for the proposition (*Darling* v. *Westmoreland,* 52 N. H. 401, 13 A. R. 55), that, when you want to know whether a certain thing can be done, one way to find out is to speculate about it; another is to try it. The application of this simple test shows that the witness was quite in error. The lamp will clamp to the prong at any point in its whole length. Whether it would clamp tightly enough at the extreme lower end of the prong to make it feasible to use it there may be a question in some doubt; but it will clamp firmly at a point too low to admit of its being hit by a Cadillac hub cap. And the higher on the prong it is attached, the less the plug interferes with the clamp. So, of course, it can be attached at any place *above* the 7 inch point. Moreover, the prong plainly shows that, at some time, the lamp has been attached to its extreme upper end, much too high from the ground to be hit as claimed, and there is no indication whatever that it was ever attached at the point specified by the witness.

We pause here to say that while this plaintiff is entitled to a favorable construction of the evidence, the law does not require us to close our eyes to the operation of such natural laws as we take notice of (Chamb. Ev., § 703), or to ignore the physical facts that are before us. The highest proof of which any fact is susceptible is that presented to the senses. So it is that though one or even more witnesses testify that a thing is so, their testimony will not be given credence when indisputable evidence to the contrary is before the court. Thus, in *Riggie* v. *Grand Trunk Ry. Co.,* 93 Vt. 282, 107 Atl. 126, the plaintiff and another testified that a certain track jack was so worn and out of repair as to allow the "dog" to slip out of the cogs, and this, it was claimed, was the cause of the accident. But the jack was before us, and an inspection of it plainly refuted the testimony. We held, in effect that the testimony referred to went for naught. So the foregoing testimony of Sumner is to be disregarded.

When found at the place of the accident, the lamp was torn from the prong and wedged in between the prongs of the fork. With the exception of some opinion evidence that can be rejected as unreliable in view of what the bicycle itself shows, since it is obvious that the lamp could be *forced* into the fork from the rear as well as from the front, the evidence on this subject comes from the witness Albee. Our former opinion shows that at that

trial the evidence was that the lamp was wedged into the fork from the rear; Albee so testified at this trial, at first, saying it "had swung in from the back." But he later on indicated that it was jammed in from the front with its "eye" pointing to the rear. The question as to which of these statements is true is obviously vital to the plaintiff's case; for, if the lamp was driven into the fork from the rear, it could not have been propelled by a blow from the rear. Albee also testified at the other trial, referring to the removal of the lamp from the fork, that he "didn't know how they got it out of there;" but he testified at this trial that he pulled it out, and that he had to use both hands to do it. Nor are these all or the worst contradications in which this witness is involved. At this trial, while being examined by counsel for the plaintiff, he testified regarding the dent in the back of the lamp as follows:

"Q. Did that lamp at that time look like it does now?

A. I never examined it very close.

Q. Well, look it over.

A. There is quite a dent in there" ———.

The witness was cut off at this point by a repetition of the question, but it is apparent that there was some doubt in his mind about that dent being there when he removed the lamp from the fork, though he answered the repeated question in the affirmative. The testimony then went on as follows:

"Q. I call your attention to the dent on the back of that bicycle lamp. Did you notice that dent at the time you picked it out of the bicycle?

A. No sir, I can't say that I did; it was never called to my attention.

＊   ＊   ＊   ＊   ＊   ＊   ＊   ＊

Q. Did you notice some break on the lamp at that time?

A. I don't remember of having my attention call to it. I don't think I noticed anything then."

This was in the forenoon. In the afternoon of the same day, Albee was recalled and testified as follows:

"Q. I asked you whether you observed any breaks on this lantern when you looked at it; now I will ask you if you noticed any dent on the lantern when you took it out of the bicycle at that time and observed its condition?

A. Yes sir, I did.

Q.  I will show you the lantern and ask you if the dent. was in the same place that it appears to be in now?

A.  Yes sir.

Q.  I am now referring to the dent in the container.

A.  Yes sir.

Q.  When you noticed that dent at the time you took the lantern out of the bicycle, was it a fresh or an old dent?

A.  A fresh one.''

Special comment on the reliability of this witness in his situation as thus disclosed is unnecessary.  However, it would be for the jury to say how much of his last statement it would believe in view of his first one, if the case reached the jury.

It was the plaintiff's theory that the lamp, driven by the blow of the automobile hub cap, was so firmly wedged into the fork that the front wheel was locked and that the momentum of the bicycle with the 180 pound man on it gave the fork and frame such a shock as to bend the former backward and the latter, upward.  But all agree that if this happened, it would cause the front wheel to slide forward on the ground.  But no mark of this was found.  Then, too, the testimony shows that the first effect of a blow on the rear of the lamp would be to turn the front of the front wheel to the right, and this of course would turn the rear of the front wheel to the left.  The wheel would not be thus turned until the collision occurred; the wheel would not be locked until the lantern became wedged into the fork; the frame would not buckle until the wheel locked.  Of course the whole thing was accomplished in so short a time that the intervals between these events were too short to be measured in terms of time, but however short they were there was a sequence, and the bending of the fork would come with the rear of the front wheel to the left of the top member of the frame, whereas it is in fact at the right of it.  One of the experts attempts to explain this by saying that the rider of the bicycle was somewhat off balance to the left at the time.  But this is pure speculation as there is no evidence to that effect, and the only evidence in the case on that subject is that the bicycle did not change its course as the defendant passed it, as it would have to do if the rider turned the front wheel to the left to restore his balance.

The lamp itself affords strong evidence that the dent could not have been made in the way suggested.  Passing over the

question whether it would be possible for this lamp, firmly clamped to the fork, to withstand the terrific blow of a two-ton car going 30 miles an hour—the expert says its momentum would be over 80 tons per second—without being disfigured any more than it is, the location of the dent shows that is could not have been caused by the hub cap. Counsel for the plaintiff call our attention to the fact that dent is directly in the rear of the cup. And so it is. Indeed, a full inch of it is to the right of the middle line of the rear of the lamp. With the bracket of the lamp and its attachments hanging down behind the dent midway (right and left) between its extremes, and to a point at least $1\frac{3}{8}$ inches lower than the top of the dent, it would be impossible for the hub cap to hit the cup where the dent appears. It would have hit the bracket, Nor can this difficulty be avoided by saying that the automobile was "cutting in," for the dent, in that case, would be farther to the left than it is, on the rear, left-hand "corner," so to speak. And if the rider was off balance to the left, and turned his front wheel that way to recover, the dent would be found still further to the left. Nor is it believable that the hub cap would have left a slanting dent, as we have seen this one is.

There is no evidence that the decedent's injuries were caused by his contact with the ground. In fact, the medical testimony, together with other evidence, disproves any such theory. These injuries were of such a character, that it is quite apparent that a blow of tremendous force struck this man full in the face. Dr. Whitney thought this blow came from the front. If not, what did the decedent strike or what struck him? If it was an automobile, the collision must have been with some hard and rigid part of it. If it was the defendant's car, it must have left upon it some mark, dent, or stain of blood—yet the evidence shows nothing of the kind, though the car was available for examination.

And finally, the man and his bicycle were found together on the left side of the road. How could this be if the man's injuries were inflicted by striking his face on some part of the defendant's car in his flight through the air to the point where he was found? It would be impossible. A blow from the rear delivered on the back of the lamp would tend to throw both bicycle and rider to the right of the road; and if the automobile

was in the decedent's line of flight it would obstruct that flight and leave the man on the right of the car's path.

[10, 11]    The plaintiff claims that the testimony of the defendant, above referred to, that when he passed the decedent there was nothing to prevent passing in safety is evidence that the defendant must have been careless or he would not have hit the bicycle.   But this cannot be, for the fact that the defendant hit the bicycle is an inference from other facts proved, and, as we said when the case was here before, it cannot itself be made the basis of another inference.   Nor can the speed of the car be relied upon, for though it was *prima facie* evidence of negligence (G. L. 4697) there is nothing here to show, any more than there was at the former trial, that the speed of the car was a proximate cause of the accident.

[12]    We have gone into the evidence with more particularity than we otherwise would have on account of the ground on which we are to put our decision.   If we cannot say that there is no evidence in this record tending to show that the defendant's culpable fault was responsible for the decedent's injuries, we can and are constrained to say that it is insufficient to support a plaintiff's verdict.

[13]    The statement is frequently found in the books that if there is *any* evidence tending to support a plaintiff's case, it must go to the jury.   Such expressions are to be found in our own cases.   See *Smith* v. *Franklin,* 61 Vt. 385, 17 Atl. 838; *Woodsville Guar. Sav. Bank* v. *Rogers,* 82 Vt. 468, 74 Atl. 85. The time was when in some jurisdictions a mere *scintilla* was enough to send a case to the jury.   But that is not now the law of this Court, if, indeed, it ever was.   *Fadden* v. *McKinney,* 87 Vt. 316, 89 Atl. 351; *Gilman* v. *Central Vt. Ry. Co.,* 93 Vt. 340, 107 Atl. 122, 16 A. L. R. 1102.   It was held, in effect, in *Mt. Ida School* v. *Gilman,* 96 Vt. 13, 116 Atl. 71, that anything more (however slight) than a mere *scintilla* requires a submission of the case to the jury.   The accuracy of this statement depends upon the meaning ascribed to the term *"scintilla,"* to which we shall refer again.

The form of expression used in some of our cases is that there must be *substantial* evidence to make a case for the jury. See *Schofield's Admr.* v. *Metropolitan Life Ins. Co.,* 79 Vt. at page 167, 64 Atl. 1107, 8 Ann. Cas. 1152; *Gilman* v. *Cent. Vt. Ry. Co.,* 93 Vt. at page 347, 107 Atl. 122, 16 A. L. R. 1102; *Cum-*

*mings' Admr.* v. *Cambridge,* 93 Vt. at page 351, 107 Atl. 114. The orthodox form of expression has come to be, with us, that the evidence must fairly and reasonably tend to establish the essential facts of the plaintiff's claim to entitle him to go to the jury. See *Latremouille* v. *Bennington & R. Ry. Co.,* 63 Vt. at page 344, 22 Atl. 656; *Gutzwiller* v. *American Tobacco Co.,* 97 Vt. at page 284, 122 Atl. 586, and many cases between these.

[14, 15] This expression, rightly understood, means that not only must there be some evidence tending to support the claim, but also that it must be of such quantity and character as to justify a jury, acting reasonably, to predicate a verdict thereon in favor of the party having the burden of proof. The question is not whether there is any evidence, merely, but whether there is any evidence on which a jury can reasonably and properly find such a verdict. This feature of the law is of great importance. It gives rise to this situation: A motion for a verdict is to be granted whenever it would be the duty of the court, in the exercise of a wise judicial discretion to set aside a contrary verdict if rendered. Though there is some evidence in the record tending to establish the claim, if the countervailing evidence so preponderates over it that it would be an abuse of the trial court's discretion to refuse to set aside a plaintiff's verdict founded thereon, a motion for a defendant's verdict may, without error, be granted.

We agree with Prof. Wigmore (§ 2494) that there is no virtue in any particular form of words, and it may well be taken that the various forms of expression regarding the *quantum* of proof above referred to, when rightly understood, mean the same thing and are in complete harmony with the views herein expressed; indeed, the *scintilla* rule itself, properly interpreted, may not be in conflict with these views, and it may be that any evidence that will not withstand the above test, is, in law, a *scintilla,* merely. See note to *Holstein* v. *Benedict,* Ann. Cas. 1918B, 941.

We are not here announcing a new doctrine of the law; we are merely following the decisions in *Spaulding* v. *Mutual Life Ins. Co.,* 94 Vt. 42, 109 Atl. 22, and *Jacobs* v. *Loyal Protective Ins. Co.,* 97 Vt. 516, 124 Atl. 848, which are in accord with the best considered modern cases, including *Small Co.* v. *Lamborn & Co.* (U. S.), 69 L. ed. —, 45 Sup. Ct. 300.

We hold, then, that it would have been legal error for the

trial court to have refused to set aside a plaintiff's verdict based on the evidence in this record, and for that reason the action of that court in granting the motion for a verdict was without error.

*Judgment affirmed.*